**CHRISTUS SPOHN HEALTH SYSTEM CORPORATION, Appellant,**

v.

**NUECES COUNTY HOSPITAL DISTRICT, Appellee.**

**No. 13–00–368–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 19, 2000.

Rehearing Dismissed Jan. 11, 2001.

Ben A. Donnell, Clay E. Coalson, Sandra Sterba–Boatwright, Meredith, Donnell & Abernethy, Corpus Christi, for appellant.

John Blaise Gsanger, Michael G. Terry, Edwards Law Firm, Corpus Christi, for appellee.

Before Justices HINOJOSA, YAÑEZ, and CHAVEZ.

## OPINION

Opinion by Justice CHAVEZ.

Nueces County Hospital District ("the Hospital District") has contracted with Christus Spohn Health System Corporation ("Spohn") to provide health care to indigent residents of Nueces County. The parties entered into three related agreements; a "Master Agreement," a "Lease Agreement," and an "Indigent Care Agreement ." The instant dispute concerns the means of calculating the Hospital District's payments to Spohn and whether the Hospital District has fulfilled its obligation to use reasonable efforts to persuade Nueces County to increase the maximum annual payment to Spohn. The provisions governing the calculation of the payments and the Hospital District's obligation to seek more funding are found in the Indigent Care Agreement.

Spohn filed a declaratory judgment action and a demand for arbitration. The trial court entered an order staying arbitration, and Spohn appeals from that order.[1] Spohn contends that an arbitration provision in the Master Agreement applies throughout the related agreements, and applies to the instant dispute. The Hospital District contends that a particular provision in the Indigent Care Agreement provides that a mandamus action is the appropriate means for resolving a dispute of this kind. We hold that, while the mandamus provision relied on by the Hospital District is inapplicable to the instant dispute, there is also no arbitration provi-

sion that applies, and therefore we affirm the trial court's order staying arbitration.

The arbitration provision in the Master Agreement states:

11.21 *Arbitration.*

Except as otherwise provided herein, in the event of any controversy, dispute, or claim arising out of this Agreement, or the breach thereof, Landlord [the Hospital District] and Tenant [Spohn] acknowledge and agree that ...[2] such underlying dispute or controversy shall be settled by arbitration conducted in Corpus Christi, Texas in accordance with this Section 11.21 of the Agreement and the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

We must determine, then, whether the arbitration provision's reference to a "controversy, dispute, or claim arising out of this Agreement" encompasses the instant dispute.

■ The Hospital District contends that the instant dispute is covered by the following provision in the Indigent Care Agreement:

7.4 *Mandamus Action* If the District fails to pay for Health Care Services rendered by or on behalf of Provider out of funds lawfully available and appropriated under an approved budget for that purpose, the District agrees that Provider [Spohn] shall be, to the extent permitted by law, entitled to a writ of *mandamus* .... (empasis in the original).

The instant dispute does not concern "funds lawfully available and appropriated under an approved budget for that purpose." Indeed, part of the Heath District's complaint is that sufficient funds have *not* been appropriated.

■ Traditionally, the writ of mandamus issues to compel the performance of a

---

1. We have jurisdiction over this interlocutory appeal under section 171.098 of the Texas Civil Practice and Remedies Code (Vernon Supp.2000).

2. The omitted words allowed for seeking temporary or preliminary relief in court or for the tolling of limitations statutes.

ministerial act or duty. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994) (quoting *Rains v. Simpson,* 50 Tex. 495, 501 (1878)).

It makes sense, then, that where money has been appropriated for payment to Spohn, but such funds have not been delivered to it, that a mandamus action might be used to compel the performance of the ministerial function of actually delivering the funds to Spohn. However, the alleged breaches by the Hospital District concerning how payments are to be calculated and whether the Hospital District has made adequate efforts to increase the amount appropriated for Spohn are not matters where "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment," and, therefore, do not concern ministerial acts. We conclude that the mandamus remedy set out in section 7.4 of the Indigent Care Agreement does not govern the instant dispute.

■ We must determine, then, whether Spohn is correct that the arbitration provision in the Master Agreement applies to this dispute. The Hospital District contends that this arbitration provision applies only to disputes arising from the provisions of the Master Agreement. Because this dispute arises from the provisions of the Indigent Care Agreement, the Hospital District contends, the arbitration provision does not apply. We agree with the Hospital District.

■ Historically, Texas law has favored settling disputes by arbitration. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996). Courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996). Once the existence of an arbitration agreement has been shown, the party resisting arbitration bears the burden of proving that the dispute at issue falls outside of the arbitration agreement. *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995). The policy favoring enforcement of arbitration provisions is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* at 899.

The arbitration provision relied on by Spohn from the Master Agreement requires arbitration of disputes "arising out of this Agreement." The first sentence of the Master Agreement explains that the phrase "this Agreement" refers to the Master Agreement.[3] Elsewhere, the phrase "this Agreement, and the Related Agreements" is used to indicate application of a provision to both the Master Agreement and the Lease Agreement and the Indigent Care Agreement. Therefore, use of the phrase "this Agreement," without the phrase "and the Related Agreements," indicates that a provision applies only to the Master Agreement. This distinction indicates that the arbitration provision in the Master Agreement, which applies to "this Agreement" (not "this Agreement and the Related Agreements"), applies only to the Master Agreement.

Spohn refers to three other provisions in support of its argument that the disputes arising from the Indigent Care Agreement are subject to the arbitration provision of the Master Agreement. First, Spohn notes that the recitals at the beginning of the Indigent Care Agreement "indicate that the Indigent Care Agreement is being executed under the terms of the Master Agreement." The recital states:

---

3. The first sentence begins: "THIS MASTER AGREEMENT ("this Agreement") is entered into and effective as to the 6th day of August, 1996, by and between...."

WHEREAS, this Agreement constitutes a Related Agreement under the terms and considerations expressed in the Master Agreement and the conditions to the obligations of each of the parties to the Master Agreement and the Lease Agreement to consummate the transactions contemplated thereby include the execution and delivery of this Agreement by the parties hereto;

Spohn would lift from context the phrase "under the terms and considerations in the Master Agreement" and subsume the Indigent Care Agreement under the terms of the Master Agreement. However, this provision actually reinforces the interpretation that the Indigent Care Agreement is a distinct "Related Agreement." "Under the terms and considerations expressed in the Master Agreement," the parties contemplated that an indigent care agreement, as a "Related Agreement," would be reached.

Spohn also notes that the Indigent Care Agreement was attached as an "Exhibit" to the Master Agreement, and that the Master Agreement expressly includes the exhibits attached to it. The provision relied on by Spohn for this argument states:

> This Agreement, (including all Exhibits and Schedules hereto) and the Related Agreements (including all Exhibits and Schedules thereto) constitute the entire agreement between the parties . . .

Here again, specific reference is made to "the Related Agreements ." If the Indigent Care Agreement were nothing more than an exhibit to the Master Agreement, then there would be no need for this provision to refer separately to "the Related Agreements" to incorporate the Indigent Care Agreement into the "entire agreement between the parties."

Spohn also argues that "the obligation to pay pursuant to the terms of the Indigent Care Agreement is also incorporated into the Master Agreement at section 10.7." Section 10.7 is the provision that expressly contemplates the formation of an indigent care agreement. Spohn argues that this is further indication that the contracts are "inseparable." We agree that the contracts are related. They are, however, distinct.

 There is one other reason why we conclude that the arbitration provision in the Master Agreement does not apply to this dispute. Construing the arbitration provision in the Master Agreement as applicable throughout the related agreements would render superfluous the arbitration provision included in the Lease Agreement. The Lease Agreement contains a general provision that disputes arising from the Lease Agreement will be settled by arbitration.[4] In construing a contract, we must attempt to give effect to all contract provisions so that none will be rendered meaningless. *Kelley–Coppedge, Inc. v. Highland Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To construe the arbitration provision of the Master Agreement as applying to the Indigent Care Agreement and the Lease Agreement would render meaningless the arbitration provision in the Lease Agreement.

Spohn relies on a provision in the Indigent Care Agreement that the remedies of the Indigent Care Agreement are "in addition to, and not in limitation of" the remedies set out in the Master Agreement. However, the construction urged by Spohn would render meaningless several provisions of the agreements. The provisions states:

4. The provision states:
 10.25 *Arbitration*
 Except as otherwise provided herein, in the event of any controversy, dispute or claim arising out of, or relating to, this Lease, or the breach thereof, Landlord and Tenant acknowledge and agree that . . . such un-

derlying controversy, dispute or claim shall be settled by arbitration conducted in Corpus Christi, Texas in accordance with this Section 10.25 of this Lease and the Commercial Arbitration Rules of the American Arbitration Association (*"AAA"*).

9.7 *Remedies.* All rights, powers and remedies granted to either party by any particular term of this Agreement are in addition to, and not in limitation of, any rights, powers or remedies which it has under any other term of this Agreement, including, without limitation, Section 4.2 and 6.2 and Article VII, the Master Agreement or the Lease Agreement, at common law, in equity, by statute, or otherwise.

This provision cannot mean that the provisions of the agreements which provide specific remedies are merely optional and do not limit the parties to those stated remedies. Were this so, then the arbitration provision which Spohn seeks to incorporate from the Master Agreement would also be optional, and parties would retain their rights to seek remedies "at common law, in equity, by statute, or otherwise." An "optional" arbitration provision, which binds neither party, would be meaningless, because parties always have the right to mutually agree to use arbitration to settle a dispute. We conclude that the construction urged by Spohn must fail because it would render provisions of the agreement meaningless. *Kelley–Coppedge, Inc.,* 980 S.W.2d at 464.

Spohn also relies on *Gerwell v. Moran,* 10 S.W.3d 28 (Tex.App.—San Antonio 1999, no pet.). In that case, the parties entered into successive agreements, the former containing an arbitration provision, and the latter not. The court concluded that because the dispute at hand touched upon issues related to the earlier agreement, the arbitration provision in that agreement applied. *Id.* at 32–33. However, the *Gerwell* court was not confronted with the insurmountable contract construction obstacles presented by the construction urged by Spohn in this case. Therefore, we consider *Gerwell* inapposite.

■ Finally, Spohn argues that the agreements indicate a general intent to resolve disputes in an amicable and private manner, and refer to the affidavit of David Lopez, former executive director of the Hospital Department, as evidence of this intent. However, Spohn fails to justify reference to such parol evidence. Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. *See Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 283 (Tex.1996).

We conclude that no arbitration provision applies to the disputes at issue in this case. The order of the trial court is affirmed.