Affirmed and Majority and Dissenting Opinions filed May 6, 2010.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00490-CV

____________

 

SUSAN WHEELER, Appellant

 

V.

 

HONORABLE MAYOR WILLIAM WHITE, CHIEF HAROLD HURTT, AND
OFFICER’S CIVIL SERVICE COMMISSION, Appellees

 

 



On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 2005-25844

 

 

 



D I S S E
N T I N G   O P I N I O N

            The outcome
of this case turns on the construction of a written contract.  The fundamental
rules of contract construction are premised on a court’s consideration of all
of a contract’s terms.  But this court cannot apply these rules in this case
because the record contains only a portion of the contract.  Though the appellees/defendants
sought relief in the trial court based on a fifty-five page contract, they provided
the trial court with only four of the contract’s pages.  With a limited
exception recognized only in cases involving insurance policies, binding precedent
requires that the court consider the whole contract before granting relief
based on it. Rather than follow precedent from the Supreme Court of Texas and
from this court requiring reversal and remand so that the trial court can
review the entire contract, the majority instead holds for the first time in Texas
jurisprudence that, in a non-insurance context, a party can obtain relief based
on a written contract without providing the court with all of the contract
terms.  I respectfully dissent.

Today’s holding conflicts
with binding precedent.

            Today’s holding conflicts
with this court’s holding in Crawford v. Pullman, Inc., 630 S.W.2d 377,
379–80 (Tex. App.—Houston [14th Dist.] 1982, no writ), a case that also
involved unprovided portions of a written contract in a non-insurance context. 
In Crawford, the trial court granted a traditional motion for summary
judgment in favor of a plaintiff suing on two lease agreements.  See id. 
Though it was clear from the front pages of the lease agreements that there
were terms on the reverse sides, the plaintiff provided the trial court with
only the front sides.  See id.  Although the appellant did not complain
about the appellee’s failure to provide all of the terms of the agreements,
this court held that the trial court erred in granting summary judgment without
reviewing all the provisions of the written contracts.  See id.  Noting that
the missing provisions (on the unprovided reverse sides) could be relevant to
whether the appellee was entitled to judgment as a matter of law, this court held
that a summary-judgment movant was not entitled to relief based on the two
contracts because it did not prove all of the provisions of those contracts.  See
id. 

            In the case under review,
appellees/defendants Mayor William White and Chief Harold Hurtt, in their
official capacities, and the Officer’s Civil Service Commission (collectively
hereinafter the “City Parties”) filed a plea to the jurisdiction in which they
asserted that the trial court lacked jurisdiction over the claims asserted by
appellant/plaintiff Susan Wheeler, based on the terms of the “Meet and Confer
Agreement” between the Houston Police Officers’ Union and the City of Houston
(hereinafter “Agreement”).  The trial court and this court review this type of
a challenge in a plea to the jurisdiction under a legal standard substantially
similar to the standard used to determine whether a traditional motion for
summary judgment should be granted.  Texas Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d  217,  227–28 (Tex. 2004).  In Crawford, this
court held that a party could not obtain relief by means of a traditional
motion for summary judgment if that relief is based on a contract and the
record does not contain proof of all of the contract’s terms.  See Crawford,
630 S.W.2d at 379–80.  The Crawford case is on point and precludes this panel
from affirming the trial court’s ruling based on an alleged lack of standing
under the Agreement.  See id.  Because there is no decision from the
Supreme Court of Texas or this court sitting en banc that is on point and
contrary to the Crawford decision, this panel is bound by Crawford. 
See Chase Home Finance, L.L.C. v. Cal W. Reconveyance Corp., No.
14-08-00115-CV, 2010 WL 660166, at *9 (Tex. App.—Houston [14th Dist.] Feb. 25,
2010, no pet. h.).  But even if Crawford were not binding precedent, this
court still should follow its sound rationale for requiring parties to produce
the entire contract before the court grants any relief under it.

Among the unwelcome consequences of
today’s decision is this court’s inability—in the absence of a complete
agreement—to apply settled principles of contract construction.     In construing the Agreement, this court’s primary
concern is to ascertain the true intentions of the parties as expressed in the
Agreement.  See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229
(Tex. 2003).  To achieve this end, this court must examine and consider the entire
Agreement in an effort to harmonize and give effect to all the
provisions of the Agreement so that none will be rendered
meaningless.  See id.; MCI Telecomm. Corp. v. Texas Util.
Elec. Co., 995
S.W.2d 647, 650–52 (Tex. 1999) (holding that, to determine whether a party may
sue under an agreement as a third-party beneficiary, a court must examine the
entire agreement in an effort to harmonize and give effect to all the
agreement’s provisions so that none will be rendered meaningless).    No single
provision of the Agreement should be given controlling effect; rather, all
the provisions of the Agreement must be considered with reference to the whole
instrument.[1]  
See id.  Applying these rules is impossible when the court is not
provided with the entire contract. 

It would have been the work of a
moment to submit a complete copy of the Agreement, yet the City Parties
provided the trial court with less than ten percent of the document.  Though
the record contains approximately half of the Agreement’s terms,[2]
half of the terms are unknown to this court.  Construction of the
Agreement based only on the portions in our record may render one or more of
the omitted terms meaningless.  This court, however, has no way of knowing
whether or to what extent the unknown provisions impact the known ones and no
way to harmonize any provisions of the Agreement that may conflict or appear to
conflict with the majority’s construction of the Agreement.  

Piecemeal parts of a contract have no
separate existence.  Every part of a contract adjusts itself to every other
part, each assuming equal dignity as to legal validity. This means that in a
contract-construction analysis, the ninety percent of the Agreement the City
Parties did not submit is entitled to just as much consideration as the ten
percent the City Parties did submit.  Nonetheless, under the majority’s
analysis, neither the trial court nor this court need consider or even examine
the entire Agreement in an effort to give effect to all the Agreement’s
provisions. 

It is not unusual for contracts,
especially lengthy ones, to contain provisions which seem to conflict.  In
these cases, the contract itself sometimes indicates which of two or more conflicting
provisions should prevail.  For example, in Helmerich & Payne
Interational Drilling Company v. Swift Energy Company, this court confronted
a paragraph in a contract with a clause stating “notwithstanding anything to
the contrary contained in this agreement” and held that it took precedence over
another paragraph that lacked such a clause, even though the paragraph lacking the
clause was directly contrary to the paragraph with the clause.  See 180
S.W.3d 635, 642–43 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Article 5 of the Agreement, on which today’s
decision turns, does not contain any clause stating “notwithstanding anything
to the contrary contained in this agreement.”  Therefore, any omitted provision
of the Agreement that contains such a clause would preempt and render
ineffective anything to the contrary in article 5.  See id.

            Though Webster and
other precedents hold that no single provision of the Agreement can be given
effect without considering it in light of the rest of the Agreement, the
majority indicates that, in some cases, courts can give effect to part of a
contract without considering the remainder of the contract.  The majority cites
C&C Partners v. Sun Exploration & Production Co., for this
proposition.  See 783 S.W.2d 707, 714 (Tex. App.—Dallas 1989, writ
denied), disapproved of on other grounds,  Formosa Plastics Corp. USA
v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41, 47 (Tex.
1998).  However, a review of the C&C Partners case reveals that it
stands for the unremarkable proposition that, even though courts should
consider a provision in light of all other provisions of the contract, in some
cases, only one provision speaks to an issue, and the other provisions do not
alter the analysis.  See id.  In the C&C Partners case, the
court had before it all of the provisions of the contracts in question.  See
id. at 714–15.  Furthermore, that case does not stand for the proposition
that in some cases a court may construe one part of a contract without
considering it in light of all the other provisions of the contract.  See id. 
Even if the C&C Partners court had so held, this holding would
conflict with Webster as well as with a recent en banc opinion from this
court.  See Webster, 128 S.W.3d at 229; Ross v. Union Carbide Corp.,
296 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2009, pet. filed) (en banc).
 “[W]e must presume that the parties
to a contract intended every clause to have
some effect, we cannot selectively grant controlling effect to the individual provisions appellants cite.  Instead,
we examine the entire contract and harmonize its provisions so that none are
rendered meaningless.”  Ross, 296 S.W.3d at 219 (emphasis in original)
(citations omitted).

The majority suggests that Wheeler and
the City Parties have agreed that all portions of the Agreement relevant to the
jurisdictional issues in this case are in the record.  This is inaccurate. 
Though Wheeler has assigned error as to the trial court’s conclusion that she
lacks standing, no party has asserted that all relevant portions of the
Agreement are in the record, so neither side has taken a position on this
issue.  Nonetheless, one might presume that if the parties thought other
portions of the Agreement were relevant, then they would have made sure that at
least those portions of the Agreement were in the record.  However, in the
absence of the parties’ express position on this issue, this court simply does
not know the parties’ mental thought processes.[3]


            More importantly, even if
the parties had stipulated that the parts of the Agreement that are absent from
the record are totally irrelevant to the issues in this case, it is not clear
that the court could give effect to this stipulation.  Texas courts generally
treat contract terms more as the law between the parties than as a fact that
can be stipulated away.  For example, even if Wheeler and the City Parties had stipulated
that the Agreement is unambiguous, this court still would have to conduct an
independent inquiry into whether the Agreement is ambiguous, and if this court
were to conclude that the Agreement is ambiguous, it would so hold, despite the
stipulation of the parties to the contrary.  See, e.g., Watkins v.
The Krist Law Firm, P.C., No. 14-02-00291-CV, 2003 WL 21786173, at *3–5 (Tex.
App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism’d) (mem. op.) (holding that
contract was ambiguous even if the parties agreed that the contract was
unambiguous); City of Bunker Hill Vill. v. Memorial Vills. Water Auth.,
809 S.W.2d 309, 310 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding
that court was not bound by parties’ agreement that contracts were unambiguous
and holding that contracts were ambiguous). 

            Courts determine a contract’s
meaning from all the contract’s language, not from the piecemeal portions of
the contract cited (or provided) by the parties.  See Tower Contracting Co.
v. Flores, 302 S.W.2d 396, 399 (Tex. 1957); Crawford, 630 S.W.2d at
379–80.  Indeed, a court can base its construction of a contractual provision
on parts of the contract not cited to the court by any party.  See
Stonehill-PRM WC I, L.P. v. Chasco Constructors, Ltd., L.L.P., No
03-08-00494-CV, 2009 WL 349136, at *6–8 (Tex. App.—Austin Feb. 11, 2009, no
pet.) (mem. op.); Christus Spohn Health Sys. Corp. v. Nueces County Hosp.
Dist., 39 S.W.3d 626, 629–31 (Tex. App.—Corpus Christi 2000, no pet.).  A
court simply cannot properly apply the rules of contract construction to
isolated pages, nor can a court properly determine the meaning of a contract’s
terms without examining them in the context of the entire agreement.

            The majority concludes that, under Miranda,
the City Parties did not need to prove up the entire Agreement or provide the
trial court with all of its terms.  See ante at p. 7.  However, the
plaintiffs in Miranda asserted tort claims based on personal injuries.  See
Miranda, 133 S.W.3d at 220–21.  There was no issue in Miranda as to
whether a party can obtain relief based on a contract without providing the
court with all of the contract terms; indeed, there were no contracts involved
in Miranda.  See id. at 220–34.  

            As noted by the majority,
the Miranda court established that the procedure for adjudicating pleas
to the jurisdiction involving evidence is substantially similar to the standard
used to determine whether a traditional motion for summary judgment should be
granted.  See id. at 227–28.  The Miranda court noted that, in
these cases, the governmental entity is required “to meet the summary judgment
standard of proof.”  Id. at 228.  The Miranda court established
that these pleas to the jurisdiction should follow the procedure for
traditional motions for summary judgment; however, nothing in Miranda
changed the law regarding this procedure that the Miranda court applied
to pleas to the jurisdiction.  Therefore, Miranda did not address or
disapprove in any way the Crawford case from this court.  Compare id.
at 226–29, with Crawford, 630 S.W.2d at 379–80.  

            The majority seems to
suggest that, because the City Parties presented evidence regarding the
Agreement, the burden then shifted to Wheeler to present evidence challenging
the City Parties’ arguments regarding the Agreement.  However, the City Parties
attached no evidence at all to their plea to the jurisdiction.  On the day of
the hearing on their plea to the jurisdiction, the City Parties filed a brief
that included four pages purportedly from the Agreement.  Under precedent from
this court, Wheeler did not have the burden to respond to these four pages of
evidence because the City Parties did not prove their entitlement to judgment
as a matter of law by proving up the entire Agreement.  See Crawford,
630 S.W.2d at 379–80; Keathley v. J.J. Invest. Co., No.
06-08-00082-CV, 2009 WL 1953436, at *3 (Tex. App.—Texarkana July 9, 2009, no
pet.) (mem. op.) (holding that movant for traditional summary judgment did not
satisfy its initial burden because, among other things, it failed to prove the
terms of the contract).

The insurance-policy rule should not be
extended to apply to all contracts.

            From time to time, the Supreme Court
of Texas has created special rules applicable to the construction and
interpretation of insurance contracts in recognition of the unique relationship
between the insured and the insurer.  As discussed more fully below, this
species of contract rules is confined to the insurance context.  Significantly, because the case under review does
not involve an insurance contract, these rules do not apply to the Agreement, and this court should not expand
these rules to other types of contracts.

In Paragon Sales Company
v. New Hampshire Insurance Company, the Supreme Court of Texas held that an
alleged third-party beneficiary under an insurance policy could recover on the
insurance policy without producing a copy of the entire policy.  See 774
S.W.2d 659, 660–61 (Tex. 1989) (per curiam).  The Paragon Sales court
stated that “Texas law does not require that a plaintiff seeking recovery under
an insurance policy must introduce the entire policy into evidence to prove
the terms of the contract.”  Id. at 661 (emphasis added).  The Paragon
Sales holding applies only to an insurance contract, and the court did not
state that this rule would apply in any other context.[4]  See id. at 660–61.  


              In Texas
Farmers Insurance Company v. Murphy, the Supreme Court of Texas held that
an insurance company failed to preserve error in the trial court regarding an
affirmative defense to coverage.  See 996 S.W.2d 873, 878–80 (Tex.
1999).   In Murphy, there was no failure to prove all the terms of the
insurance policy.  See id.  The Murphy court stated the
following: “A plaintiff seeking recovery under an insurance policy,
however, must prove only those provisions that allow recovery.  If there are
any contractual provisions that could limit or bar recovery, it is incumbent on
the insurer to plead and prove them.”  Id. at 879 (emphasis added)
(footnotes omitted).  Thus, even in these dicta from Murphy, the high court
limited the statement of law to the insurance context.[5]  See id.  As with other
rules, the Supreme Court of Texas created this exception to apply in this
singular context.  Applying this limited rule in a broader context undermines
longstanding principles of contract construction.

            Because Paragon Sales and Murphy do not apply to
the non-insurance context and because this court is constrained by its prior
precedent in Crawford, this court is duty-bound to follow Crawford
in the non-insurance context.[6] 
See Chase Home
Finance, L.L.C.,
2010 WL 660166, at *9.

            The
majority does not cite, and research does not reveal, any cases applying the
rule stated in Paragon
Sales and Murphy
to the
non-insurance context.  In a case of first impression under Texas law, the
majority decides to extend this rule to the non-insurance context.  Though the
majority concludes that there is no reason why the non-insurance context should
be any different from the insurance context, material differences between these
contexts provide strong support for not extending this rule to the
non-insurance context.  

            Generally,
courts construe insurance policies according to the same rules of construction
that apply to contracts.  See Don’s Building Supply, Inc. v. Onebeacon Ins.
Co., 267 S.W.3d 20, 23 (Tex. 2008); State Farm Fire & Cas. Co. v.
Reed, 873 S.W.2d 698, 699 (Tex. 1999).  But, for reasons peculiar to the
cases involving insurance policies,  there are exceptions to this general rule;
for example, if an insurance contract is ambiguous, courts must resolve the
ambiguity by adopting the construction favorable to the insured, rather than
having the factfinder determine the parties’ mutual intent, as would occur in
the non-insurance context.  See Don’s Building Supply, Inc., 267 S.W.3d
at 23 (stating that, in insurance context, ambiguous terms are construed in
favor of the insured rather than having a trial regarding the parties’ intent);
Lenape Res. Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574
(Tex. 1996) (stating, in non-insurance context, that if a contract’s meaning is
ambiguous, then the finder of fact must determine the meaning of the ambiguous
provision based on the mutual intent of the parties).  This is a material
difference between contract interpretation principles governing the insurance
context and those governing the non-insurance context.   

            As a
practical matter, insureds generally are not given a copy of the insurance
policy, a fact that is mentioned in the Paragon Sales case, in which the
high court discussed with approval a case stating that the nature of a suit
between the insured and insurer puts the insurer, who holds the insurance
policies, on notice to produce them.  See Paragon Sales Co.,  774 S.W.2d
at 661.  Therefore, the Paragon Sales rule can be justified as
protecting the insured, who generally does not have a copy of the insurance
policy, and imposing on the insurer the burden of proving the terms of the
insurance policy.  However, this policy consideration does not support
extending the Paragon Sales rule to the non-insurance context, in which
courts cannot and do not presume that one party generally has a copy of the
contract and the other party does not.  

Absent this policy of
protecting the insured, the potential problems of extending the Paragon
Sales rule to the non-insurance context mitigate against extending the
rule.  Such an extension would contradict the common law requirement that
courts must examine and
consider the entire contract so that, as much as possible, they can harmonize
and give effect to all the contract’s provisions. See Webster,
128 S.W.3d at 229.  Such an extension also would undermine the rule that courts,
not parties, are responsible for construing the language of the contract at
issue. See Watkins, 2003 WL 21786173, at *3–5; City of Bunker Hill
Village, 809 S.W.2d at 310.  In addition, extension of the Paragon Sales
rule would create practical problems for determining the binding effect of
opinions regarding contracts.  

For example, the Agreement affects
all Houston police officers.  It would not be fair to penalize a police officer,
the Houston Police Officers’ Union (“Union”), or the City of Houston for the
failure of the parties in this case to prove all the terms of the Agreement,
some of which, as noted, might contradict the court’s determination of the Agreement’s
meaning.  Therefore, the court’s decision today should not be binding on future
cases in which the parties, as they almost always do, prove the entire
Agreement.  The only cases in which the court’s opinion in this case should be
binding are those in which the parties prove precisely the same parts of the
Agreement.  But how will future courts and parties establish which parts of
the Agreement were before this court?  The majority does not specify the
portions of the Agreement that it has considered.[7] 
In the absence of such a statement, the court’s opinion today can have no
future precedential value regarding the construction and application of the
Agreement.  If the parties were required to prove all the terms of the
Agreement, then, under ordinary common law principles, this court’s opinion
would be binding in all future cases in this court with the same or
sufficiently similar facts and issues involving the Agreement.

Finally, there is no need to extend the
Paragon Sales
rule to the non-insurance context.  There
appears to be no case in Texas jurisprudence in which the parties in a
non-insurance context were unable to prove all the terms of their contract. 
There is no reason why the City Parties could not prove the entire Agreement if
the court were to reverse and remand.[8] 


For the reasons stated
above, even if this court were not bound by Crawford, it still should
not extend the Paragon
Sales rule to the
non-insurance context.  By doing so, the court creates an unnecessary risk of
inconsistent holdings, undermines traditional rules of contract analysis, and
introduces uncertainty into a well-settled area of Texas law.

Wheeler has not judicially
admitted that the prerequisites of section 143.361 have been satisfied.

            The majority correctly notes that,
even if Wheeler lacked third-party beneficiary status under the Agreement, this
would not be a jurisdictional defect, and therefore it could not support the
trial court’s dismissal for lack of jurisdiction.  See ante at p. 5; Yasuda Fire & Marine Ins. Co.
of Am. v. Criaco, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007,
no pet.).   Thus, for
the majority’s analysis to be correct, the Agreement not only must be
enforceable, it also must have the force of a statute under section 143.361 of
the Local Government Code.  See Tex.
Loc Gov’t Code Ann. § 143.361 (Vernon 2008).  However, for section
143.361[9]
to apply to the Agreement, all of the following prerequisites (collectively
hereinafter the “Prerequisites”) must be established:

●         The Union must satisfy all the requirements for
qualifying as “bargaining agent” under section 143.352(1).

●         The Agreement must have been made under Chapter 143,
Subchapter J of the Texas Local Government Code.

●         The Agreement must have been ratified by a majority
vote of the City of Houston’s governing body.

●         The Agreement must have been ratified by a majority
vote in an election called by the Union and held under section 143.360. 

See Tex. Loc Gov’t
Code Ann. §§ 143.352, 143.359–143.361 (Vernon 2008).  The City Parties did
not prove that the Prerequisites were satisfied, and the majority does not
conclude otherwise.  Nonetheless, the majority bases its analysis on an alleged
judicial admission by Wheeler in her petition that the Prerequisites have been
satisfied.  

            Because no special
exceptions were sustained as to Wheeler’s petition, this court is to construe
that petition liberally and in Wheeler’s favor.  See Horizon/CMS Healthcare
Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).  “A judicial admission must
be a clear, deliberate, and unequivocal statement.”  Id. at 905.  In her
petition, Wheeler alleges that the Union acts as the bargaining agent on behalf
of all Houston Police Officers.  This statement might provide a sufficient
basis for concluding that proof regarding the first prerequisite above has been
made unnecessary by a judicial admission in Wheeler’s petition.  However, there
is no basis for concluding that Wheeler has judicially admitted any of the
other Prerequisites.  In her petition, Wheeler never mentions any part of the
Texas Local Government Code, and she does not assert that the Agreement was
made under any part of that statute.  Wheeler does not assert that the
Agreement was ratified by the City of Houston’s governing body or by the
Union.  Wheeler does not allege that the Agreement is enforceable under section
143.359 or under any other statute.  Under the applicable legal standard,
Wheeler has not clearly, deliberately, and unequivocally stated that the last
three Prerequisites have been satisfied.  See Rente Co. v. Truckers Exp.,
Inc., 116 S.W.3d 326, 333 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  The
majority concludes to the contrary based on the following chain of reasoning:

●         Wheeler seeks to enforce the Agreement. 

●         Therefore, she premises her claims on the
enforceability of the Agreement.

●         If the Prerequisites are satisfied, then under section
143.359, the Agreement is enforceable.

●         Therefore, Wheeler has judicially admitted that the
Agreement is enforceable and that the Prerequisites have been satisfied.

See ante at pp. 3–4.

                Wheeler does assert that the
Agreement is enforceable; however, she does not assert that the Agreement is
enforceable under the Texas Local Government Code or because the Prerequisites
have been satisfied.  If the Prerequisites are satisfied, then under section
143.359, “[a] written agreement made under this subchapter between a
public employer and a bargaining agent is enforceable.” Tex. Loc Gov’t Code Ann. § 143.359 (Vernon 2008) (emphasis
added).  This statute does not state that the Prerequisites must be satisfied before
any agreement can bind a public employer, and it does not state that an
agreement must be made under Chapter 143 for an agreement to bind a public
employer.  Under the language of the statutes in question, if Chapter 143’s
provisions are satisfied, this statute provides one way for an agreement to be
made that is binding on a public employer.  However, the statute does not state
that it is the only way for such an agreement to be made.  In addition, even if
it were the law that the Agreement must satisfy Chapter 143 to be enforceable,
Wheeler is free to make a good faith argument that the law should be modified
to allow the Agreement to be enforced even though it does not satisfy the
Prerequisites.  In the judicial-admission analysis, this court must focus on
Wheeler’s pleading to see if it contains a clear, deliberate, and unequivocal
statement that the Prerequisites have been satisfied.  In its analysis, the
majority effectively implies into Wheeler’s petition an allegation that the
Agreement is enforceable under Chapter 143 or that the only way the Agreement
can be enforceable is under Chapter 143.  These allegations are not in the
petition, and this court must construe that petition liberally in Wheeler’s
favor.  See Auld, 34 S.W.3d at 897.

The evidence before the trial court does
not support a finding that the Prerequisites are satisfied, and the record
contains no stipulation or judicial admission by Wheeler to this effect. 
Because the record contains no evidence, stipulation, or admission that the Prerequisites
were satisfied, the trial court erred to the extent it granted the City
Parties’ plea to the jurisdiction based on their argument that section 143.361
applies to the Agreement.

The City Parties’ argument
regarding appeals from administrative orders lacks merit.

In their plea to the jurisdiction,
the City Parties also invoked a line of cases holding that, absent statutory
authorization, district courts have no jurisdiction to hear an appeal from an
administrative order, unless the order violates a constitutional provision.  See
City of Amarillo v. Hancock, 239 S.W.2d 788, 790 (Tex. 1951).  This
argument fails as a matter of law because Wheeler is not challenging any
administrative order in this lawsuit.  In addition, the City Parties did not
prove any applicable statutory regime, so there is no way to determine on this
record whether Wheeler has a right to bring this suit under any applicable
statutory regime.   

The City Parties’ standing argument lacks
merit.

In their plea to the jurisdiction,
the City Parties asserted that Wheeler has no standing to file this suit based
on article 5 of the Agreement.  However, to the extent this standing argument
is dependent upon the Agreement’s preemption of other statutes under section
143.361, as discussed above, there is no evidence that the Prerequisites are
satisfied so that the Agreement has the force of a statute.  To the extent the
City Parties were making a standing argument based on Wheeler’s alleged status
as third-party beneficiary under the Agreement and regardless of any statute, that
argument, even if successful, would go to the merits and would not provide a
basis for affirming the trial court’s dismissal for lack of jurisdiction. See
Yasuda Fire & Marine Ins. Co. of Am., 225 S.W.3d at 898 (holding
that lack of rights as a party or third-party beneficiary under a contract goes
to the merits and does not deprive the court of jurisdiction).  In addition,
this court cannot determine whether Wheeler is a third-party beneficiary under
the Agreement because the entire Agreement has not been provided.  See J.M.
Davidson, Inc., 128 S.W.3d at 229; MCI Telecomm. Corp., 995 S.W.2d
at 650–52; Ross, 296 S.W.3d at 219; Crawford, 630 S.W.2d at
379–80.  

Conclusion

            The arguments
raised by the City Parties do not entitle them to a dismissal for lack of
jurisdiction.  This court should sustain Wheeler’s two issues, reverse the
trial court’s judgment, and remand the case to the trial court.  Were this
court to do so, on remand, the City Parties could have the opportunity to (1)
offer proof that the Prerequisites have been satisfied so that section 143.361
applies and (2) provide the trial court with a complete copy of the Agreement. 
Instead, the court breaks new ground today by holding that a party in a non-insurance
context can obtain favorable relief in court based on a contract without providing
the entire contract to the court.  This holding is contrary to prior precedent
from this court requiring that such a party provide the entire contract.  This
holding is also contrary to precedent from the Supreme Court of Texas and this
court sitting en banc requiring that this court examine and consider all of the
Agreement’s provisions.  The Paragon Sales and Murphy cases are
limited to the insurance context and do not apply in this case.  Any extensions
of the rule stated in these cases should be left to the Supreme Court of
Texas.  

 

                                                                        

/s/        Kem Thompson Frost

Justice

 

Panel
consists of Chief Justice Hedges and Justices Yates and Frost. (Hedges, C.J.,
majority).                 









[1]
Similarly, whether a contract is ambiguous is a
question of law that courts decide by examining the contract as a whole
in light of the circumstances present when the parties entered into the
contract.  See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996).





[2] At most, the record contains all the odd-numbered
pages and five even-numbered pages of the fifty-five-page Agreement.





[3]
For example, one or both sides may have believed
that this court could rely on the copy of the Agreement that is in the record
from the temporary-injunction hearing.  Likewise, one or both sides mistakenly
may have believed that the partial, one-sided copy of the Agreement in the
record from the temporary-injunction hearing is a complete, two-sided copy.  

 





[4]
Therefore, the Paragon Sales case is not
on point and is not contrary to the Crawford case from this court,
discussed above.  See Crawford, 630 S.W.2d at 379–80. 





[5]
Therefore, the Murphy case is not on
point and is not contrary to the Crawford case from this court,
discussed above.  See Crawford, 630 S.W.2d at 379–80.





[6]
The majority concludes that, under Blue,
the City Parties did not need to prove  the entire Agreement or provide the
trial court with all of the terms of the Agreement.  See ante at pp. 6–7. 
However, there was no issue in Blue as to whether a party can obtain
relief based on a contract without providing the court with all of the contract
terms; therefore, Blue is not on point or contrary to Crawford.  See
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555–56 (Tex. 2000).  





[7]
Even if courts specified the parts of the
contract that they had before them, this specification could become unwieldy,
and it still would not solve the problem that the case would have limited
precedential value.

 





[8]
This case does not present a situation in which
the parties, despite reasonable efforts, are unable to prove all of the terms
of a contract.  A situation in which the parties are unable to prove all of the
contract terms appears to be a rare one, given the dearth of cases dealing with
it.  However, if this situation arises, it could be addressed, and there is no
need to base the general rule in the non-insurance context on such an unusual
case.





[9]
Unless otherwise specified, all statutory
references in this opinion are to the Texas Local Government Code.