# NO. 12-18-00054-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *EOG RESOURCES, INC.,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Relator EOG Resources, Inc., seeks mandamus relief from the trial court's order refusing to transfer venue of the underlying proceeding to Harris County, Texas.[1] We conditionally grant the writ.

## BACKGROUND

Cabot Oil and Gas Corporation owns several gas producing wells in San Augustine County, Texas. Cabot contracted with EOG to operate those wells while Cabot maintained a non-operating working interest in them. Specifically, EOG and Cabot executed a Participation Agreement (PA) on February 28, 2011. The PA required the parties to execute Joint Operating Agreements (JOAs) that, among other things, authorized EOG to market Cabot's share of the gas produced from the wells, and to deduct certain expenses from the gas sale proceeds.[2]

In 2015, Cabot contacted EOG regarding its belief that EOG improperly deducted "unused firm transportation reservation charges," a type of pipeline cost, from Cabot's share of

---

[1] Respondent is the Honorable Craig M. Mixon, Judge of the 1st District Court in San Augustine County, Texas. The Real Party in Interest is Cabot Oil and Gas Corporation.

[2] The JOAs also authorized the parties to execute gas marketing agreements (GMAs), although this was not a requirement in order for EOG to market the gas produced from the wells. The parties later executed GMAs on some, but not all, of the wells at issue.

the proceeds. Accordingly, in 2017, it filed suit in San Augustine County, which is where the relevant wells are located.[3]

EOG filed a motion to transfer venue of the underlying lawsuit to Harris County, alleging that a mandatory venue provision in the PA required that claims "arising from this Agreement shall be brought in the State or Federal District Court of Harris County, Texas." Cabot responded that its claims are not based on any of the PA's provisions, they do not arise from it, and consequently do not trigger its venue provision. Moreover, it argued that the PA expired prior to the events giving rise to the suit, rendering it inapplicable. After a hearing, the trial court denied EOG's motion. EOG then filed this original mandamus proceeding.[4]

## AVAILABILITY OF MANDAMUS

A party may petition for a writ of mandamus with an appellate court to enforce mandatory venue provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West 2017); *see also* **In re Hannah**, 431 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (orig. proceeding) (per curiam). Contractual determination of venue is permitted by statute for actions arising from a "major transaction." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020 (West 2017). This statute authorizing contractual determination of venue is a mandatory venue provision. *See id.* § 15.020(b), (c)(2).

Ordinarily, mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy by appeal. **In re Prudential Ins. Co. of Am.**, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). However, a party seeking to enforce a mandatory venue provision is not required to prove the lack of an adequate appellate remedy, but is required only to show that the trial court abused its discretion. **In re Mo. Pac. R.R. Co.**, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. **Walker v. Packer**, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion by failing to analyze or apply the law correctly. *Id.* As the party seeking relief, the relator bears the burden of demonstrating entitlement to mandamus relief. *Id.* at 837.

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2017).

[4] TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West 2017).

2

EOG contends that the trial court abused its discretion when it failed to transfer venue of the proceeding to Harris County, because the parties contracted that venue would be fixed there for claims arising from this "major transaction."

**Applicable Law**

An action arising from a "major transaction" shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county. TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b). Similarly, an action arising from a major transaction may not be brought in a county if the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state and the action may be brought in that other county. *See id.* § 15.020(c)(2). "Major transaction" means a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million. *See id.* § 15.020(a).

Section 15.020 does not require that an action arise out of a specific agreement. *In re Fisher*, 433 S.W.3d 523, 531 (Tex. 2014) (orig. proceeding). Rather, it applies to an action "arising from a major *transaction.*" *Id.* (emphasis in original). In determining whether the claims asserted "arise from" a major transaction, the court is to apply a "commonsense" examination of the substance of the claims made to determine if they "arise" from the transaction. *Id.* at 529-30. A court should consider whether a claimant seeks a direct benefit from a major transaction and whether that transaction, or some other general legal obligation, establishes the duty at issue. *Id.* at 529. To resolve the issue, we apply the same type of analysis courts use to determine whether a claim is within the scope of a contract's forum selection clause. *Id.* at 530 (finding "no reason to deviate from the type of analysis" used in forum selection clause cases to determine applicability of Section 15.020 mandatory venue provision).

As part of this analysis, we focus on "the parties' intent as expressed in their agreement." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). The Texas Supreme Court observed that the words "arising out of the agreement" have broad significance absent any significant limitation from the language employed in the underlying agreement. *Id.* at 437. The court defined "arise" in the forum selection clause context to mean "to originate from a specified source," "to stem from," and "to result from." *Id.* Moreover, the court stated that this standard

connotes "a causal connection or relation," concluding that but-for causation is sufficient. *Id.* at 437–38. A "but for" cause is one "without which the event could not have occurred." *Id.* at 438. In describing the temporal reach of but-for causation, the court stated that it "has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Id.* Therefore, a party's "claims arise out of the agreement" when "but for the agreement, the party would have no basis to complain." *Id.* (citing *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 886 (Tex. 2010) (orig. proceeding) (per curiam)).

Section 15.020 is a mandatory venue provision, and when it is implicated, the tag-along venue provision in Section 15.004 also applies. *Pinto Tech. Ventures*, 526 S.W.3d at 447. Section 15.004 states that "[i]n a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by the mandatory venue provisions of Subchapter B [including section 15.020], the suit shall be brought in the county required by the mandatory venue provision." TEX. CIV. PRAC. & REM. CODE ANN. § 15.004 (West 2017); *see Pinto Tech. Ventures*, 526 S.W.3d at 447.

## Discussion

The parties do not dispute, independently or in the aggregate, that the PA, the JOAs, and the GMAs constitute a major transaction or transactions. EOG argues that the PA expressly required the parties to enter JOAs, the JOAs are expressly subject to the terms of the PA, including its venue selection provision, and that but for the working interests established in the PA and JOAs, Cabot would have no claims against EOG. Moreover, its argument continues, the parties executed gas marketing agreements (GMAs) on some of the relevant wells but not others, and the GMAs are expressly subject to the JOAs, which are in turn subject to the PA containing the venue selection provision.

Cabot responds that the entire text of Section 7.9(a) of the PA shows that the parties intended to apply the venue provision only to claims under the PA, and its claims do not arise from the PA. Specifically, Cabot argues that the choice of law provision in Section 7.9(a) of the PA states that it applies to "this agreement and the transactions contemplated hereby," whereas the venue selection provision in that same section applies only to a cause of action "arising from this Agreement." Section 7.9(a) provides in its entirety as follows:

4

**THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO PRINCIPLES THEREOF RELATING TO CONFLICTS OF LAW RULES THAT WOULD DIRECT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION.** Any claim or cause of action arising from this Agreement shall be brought in the State or Federal District Court of Harris County, Texas.

The PA defined "Agreement" as "this PARTICIPATION AGREEMENT." However, Section 7.10 states that "the *exhibits* and schedules referred to herein are attached hereto and incorporated herein by this reference, and unless the context expressly requires otherwise, the *exhibits* and schedules are incorporated in the definition of 'Agreement.'" (emphasis added). Section 7.14 states that "[t]his Agreement, together with the *exhibits* and schedules hereto, and any other documents delivered in connection with this Agreement contain the entire agreement of the Parties with respect to the subject matter hereof . . . ." (emphasis added).

The PA also defined "JOA" as "a joint operating agreement in the form attached to this Agreement as **Exhibit C**." The form JOA attached to the PA in Exhibit C states that "[t]his Agreement is subject to that certain Participation Agreement dated February 28, 2011, by and between Cabot Oil & Gas Corporation and EOG Resources, Inc. (Participation Agreement). In the event of any conflicts between this Agreement and the Participation Agreement, the terms and provisions of the Participation Agreement shall prevail to the extent of the conflict."

Article III of the PA was entitled "Joint Operating Agreements and Operator," and Section 3.1 stated that "[c]ontemporaneously with the execution of this Agreement, the Parties shall execute a separate JOA covering . . . the Nolte GU No. 1H . . . . Prior to the Commencement of operations for each Qualified Well to be drilled on the Joint Interest or on a Drilling Unit that includes Joint Interests, the Parties will enter into a JOA for such Drilling Unit." The record shows that the parties executed a JOA in the form required by Exhibit C to the PA for the Nolte GU No. 1H on the same date that they executed the PA as contemplated by Section 3.1 of the PA.

The GMAs contain a provision that "[i]n the event of a conflict between this Agreement and the applicable Joint Operating Agreement, the terms of the applicable Joint Operating Agreement shall control."

As support for its argument, Cabot relies extensively on *Christus Spohn Health Sys. Corp. v. Nueces County Hosp. Dist.*, 39 S.W.3d 626 (Tex. App.—Corpus Christi 2000, no pet.).

5

In that case, Christus contracted with the hospital district to provide health care to indigent residents of the county. *Christus Spohn Health Sys. Corp.*, 39 S.W.3d at 628. The parties entered three agreements, a Master agreement, a Lease Agreement, and an Indigent Care Agreement. *Id.* Christus later filed suit, seeking a declaratory judgment concerning terms of the Indigent Care Agreement. *Id.* As part of its suit, Christus demanded arbitration, alleging that the arbitration provision in the Master Agreement applied to all of the agreements. *Id.* The arbitration provision provided in pertinent part that all "claim[s] arising out of this Agreement . . . shall be settled by arbitration conducted in Corpus Christi, Texas . . . ." *Id.* The court held that the Master Agreement explained that "this Agreement" refers to the Master Agreement, and that elsewhere, the phrase "this Agreement, and the Related Agreements" was used to indicate application of a provision to all three agreements. *Id.* at 629.

Christus argued that the Indigent Care Agreement indicated it was executed under the terms of the Master Agreement. *Id.* at 629–30. The court, when examining the actual language of the Indigent Care Agreement, explained that "this Agreement constitutes a Related Agreement under the terms . . . expressed in the Master Agreement," which indicated the parties' intent to distinguish between the Master Agreement as "this Agreement" and the Lease Agreement and Indigent Care Agreement as "Related Agreements." *Id.* at 630.

Christus also pointed to the fact that the Indigent Care Agreement was attached as an "exhibit" to the Master Agreement, and the Master Agreement expressly included exhibits attached to it. *Id.* However, the court noted that the provision actually stated "This Agreement, (including all Exhibits and Schedules hereto) and the Related Agreements (including all Exhibits and Schedules thereto) constitute the entire agreement between the parties." *Id.* The court reasoned that "[i]f the Indigent Care Agreement were nothing more than an exhibit to the Master Agreement, then there would be no need for this provision to refer separately to 'the Related Agreements' to incorporate the Indigent Care Agreement into the 'entire agreement between the parties.'" *Id.*

Christus also argued that one of the provisions in the Master Agreement specifically stated that they would form the Indigent Care Agreement, which indicated that the contracts are inseparable. *Id.* The court disagreed, stating that they are related, but distinct agreements based on the language used in the contracts. *Id.* Moreover, importantly, not only did the Master

6

Agreement contain an arbitration provision, but the Lease Agreement contained its own separate arbitration provision, whereas the Indigent Care Agreement contained none. *Id.*

Similarly, Cabot relies on *Pinto Tech. Ventures*, where the Texas Supreme Court held that a mandatory venue provision in an amended shareholder's agreement did not apply to a finance agreement, noting that they were "separate and distinct," and there was no evidence that the parties ever agreed to a particular venue for an action arising from the financing transaction. *Pinto Tech. Ventures*, 526 S.W.3d at 447.

The agreements in this case are distinguishable from the agreements in those cases, and the evidence establishes that the parties agreed to venue for Cabot's claims in Harris County. *See id.* First, *Christus* involved the application of an arbitration provision, not a mandatory venue provision. Second, in contrast to *Christus*, only one of the agreements here contains a venue selection clause. Third, the Master Agreement in *Christus* merely recited that the parties would execute the Lease Agreement and the Indigent Care Agreement. Here, the PA not only expressly required that the parties execute JOAs, but the form JOA was attached as an exhibit to the PA, included in the definition of "this Agreement," and the JOAs were expressly made "subject to" the PA, which is an incorporation of its terms. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) ("Documents incorporated into a contract by reference become part of that contract."); *see also In re Houston Cnty. ex rel Session*, 515 S.W.3d 334, 341 (Tex. App.—Tyler 2015, no pet.) (orig. proceeding) (stating that when a contract is "subject to" a letter agreement, at minimum, the letter agreement is incorporated by reference into the contract) (citing *EOG Res., Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 702 (Tex. App.—San Antonio 2002, no pet.)). A contrary interpretation would render the JOAs' "subject to" language meaningless with respect to the venue provision. Furthermore, under the applicable legal standard, "but for" the interests created by the PA, Cabot would have no claims against EOG, and consequently Cabot's claims "arise from" the PA. *See Pinto Tech. Ventures*, 526 S.W.3d at 437–38; *In re Fisher*, 433 S.W.3d at 530.

Even if some of the claims did not arise from the PA, we would conclude that all of the claims should nevertheless be transferred to Harris County. The PA expressly required that a JOA covering the Nolte GU No. 1H interest be contemporaneously executed with the PA. The record shows that the parties satisfied this obligation and that it contained the provision stating that it was subject to the PA. This interest pertains to one of the wells that forms the basis of

Cabot's suit. Thus, the parties manifested the intent that, at a minimum, with respect to this interest, they are part of the same major transaction. *See **Fort Worth Indep. Sch. Dist. v. City of Fort Worth***, 22 S.W.3d 831, 840 (Tex. 2000) (holding that instruments pertaining to same transaction may be construed together). Therefore, the trial court was required to transfer Cabot's claims with respect to that interest. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020. In addition, the tag-along venue provision applies to all of Cabot's remaining claims, requiring that all claims be transferred to the state or federal courts in Harris County.[5] *See **id**.* § 15.004; *see **Pinto Tech. Ventures***, 526 S.W.3d at 447 (noting that if one claim is required to be transferred pursuant to Section 15.020, then all claims in suit must likewise be transferred pursuant to Section 15.004).

Cabot also argues that the caselaw development in this area concerned whether a contractual venue provision also applied to tort claims which arose out of the transaction governed by the contract at issue. *See, e.g., **Pinto Tech. Ventures***, 526 S.W.3d at 447; ***In re Fisher***, 433 S.W.3d at 529–30. Although the caselaw in this area "discusse[s] a tort/contract dichotomy [in implementing the "but for" test], rather than the scope of contractual coverage, its reasoning [also] applies in [the forum selection clause context]," and consequently, the Section 15.020 "major transaction" context. *See **In re Lisa Laser USA, Inc.***, 310 S.W.3d at 884; *see also **In re Fisher***, 433 S.W.3d at 530 (holding that the reasoning and analysis in ***In re Lisa Laser*** applies not only to forum selection clauses, but also to venue selection clauses in "major transactions" under Section 15.020).

Finally, Cabot contends that the PA expired prior to the events giving rise to its claims against EOG, and consequently, the venue provision does not apply. Section 6.1 of the PA creates a three year term. However, the PA expressly states that the provisions of Section 6.2 and Article VII shall survive the termination of the agreement, and Section 6.2 states that "any executed JOA shall survive the termination of this Agreement." Section 7.9, found in Article VII, contains the mandatory venue selection clause, which survives the termination of the agreement. Additionally, Section 7.6 states in pertinent part that "the provisions of this

---

[5] Similarly, EOG marketed gas for some of the interests that form the basis of Cabot's claims solely under the JOAs as authorized by those agreements, unaccompanied by a corresponding GMA. With respect to these interests, the JOAs are "subject to" the PA, including its mandatory venue provision. As a result, the trial court should have transferred the claims based on these interests, along with the wells subject to GMAs according to the tag-along venue statute in Section 15.004. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.004; *see **Pinto Tech. Ventures***, 526 S.W.3d at 447.

8

Agreement shall constitute covenants running with the land and shall remain in full force and effect and be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns." Cabot's argument is therefore without merit. We hold that the trial court abused its discretion in denying EOG's motion to transfer venue. *See **In re Fisher***, 433 S.W.3d at 530–31.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Based upon our review of the record and the foregoing analysis, we conclude the trial court abused its discretion by denying EOG's motion to transfer venue of this proceeding to Harris County. Accordingly, we ***conditionally grant*** Relator's petition for writ of ***mandamus***. We direct the trial court to (1) vacate its December 6, 2017 order denying EOG's motion to transfer venue, and (2) transfer the case to Harris County. We trust the trial court will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within fifteen days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

<u>**GREG NEELEY**</u><br>Justice

Opinion delivered June 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS

# DISTRICT OF TEXAS

# ORDER

**JUNE 29, 2018**

**NO. 12-18-00054-CV**

**EOG RESOURCES, INC.,**
Relator
V.

**HON. CRAIG M. MIXSON,**
Respondent

---

**ORIGINAL PROCEEDING**

---

ON THIS DAY came to be heard the petition for writ of **mandamus** filed by EOG Resources, Inc.; who is the relator in Cause No. CV-17-9753, pending on the docket of the 1st Judicial District Court of San Augustine County, Texas. Said petition for writ of **mandamus** having been filed herein on March 15, 2018, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of **mandamus** be, and the same is, *conditionally granted*.

And because it is further the opinion of this Court that the trial judge will act promptly, vacate his order of December 6, 2017, denying relator's motion to transfer venue, and issue an order transferring the cause to Harris County, Texas; the writ will not issue unless the **HONORABLE CRAIG M. MIXSON** fails to comply with this Court's order *within fifteen (15) days* from the date of this order.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*