**In re LISA LASER USA, INC. and Lisa Laser Products, oHG, Relators.**

No. 09–0557.

Supreme Court of Texas.

April 16, 2010.

Derek Lawrence Davis, Byrd Davis Furman, L.L.P., Austin, for Relators.

George Breck Harrison, Joshua Abraham Romero, Jackson Walker L.L.P., Austin, for Real Parties in Interest.

PER CURIAM.

In this mandamus petition we are asked to review a trial court's refusal to enforce a forum-selection clause designating a California forum for any lawsuits "arising out of" a distribution agreement. The clause was in an exhibit to the agreement, signed by all the parties, but the exhibit specifically referenced only one of the two defendants sued. We hold that the trial court abused its discretion in failing to enforce the clause, and we conditionally grant the petition.

Relator Lisa Laser Products, oHG[1] ("Lisa Germany") is a German partnership that manufactures lasers for use in various medical fields. Lisa Laser USA, Inc., ("Lisa USA") is the registered assumed named of a California corporation affiliated with Lisa Germany (collectively, "Lisa Laser"). Lisa Germany manufactures medical lasers, and Lisa USA is the distributor of those products within the United States. In 2005, Lisa USA signed a distribution agreement with Real Party in Interest HealthTronics, Inc., a Georgia corporation headquartered in Austin, Texas. In 2007,

---

1. oHG is short for "offene Handelsgesellschaft" which literally translates to "open trading company." Langenscheidt's German-English, English-German Dictionary 112, 165 (E. Klatt & G. Golze eds., 1962); Modern Dictionary of International Legal Terms 27 (Little, Brown & Co. 1993) (1992). It is the German equivalent of a general partnership. *E.g.*, Norbert Meister & Gunner Schuster, *Classifying Foreign Entities Investing in Germany*, 2 Int'l Tax Rev., July/Aug. 1991, at 42, 42.

the agreement was superseded by an Amended and Restated Distribution Agreement (the Distribution Agreement or Agreement) that included Lisa USA and HealthTronics, the original contracting parties, and added Lisa Germany as a party. The President of Lisa USA, the CEO of Lisa Germany, and the Senior Vice–President for Medical Products of HealthTronics signed it.

The Distribution Agreement gave HealthTronics exclusive U.S. distribution rights for particular Lisa Laser medical devices. It also provided HealthTronics with rights of first refusal to distribute new, related products that Lisa Laser may produce, on condition that HealthTronics fulfill yearly purchase quotas and comply with other requirements. The Distribution Agreement also contained eight separately attached Exhibits, labeled A through H. Exhibit F is Lisa Laser's "Standard Terms and Conditions." Its preamble states:

> The following standard terms and conditions of sale apply to sales by Seller [Lisa Laser USA, Inc.] to HealthTronics, Inc. . . . pursuant to the Distribution Agreement between the parties, a copy of which is attached hereto and incorporated herein by this reference, except as specifically modified in the Distribution Agreement.

Exhibit F also includes the following forum-selection clause, in Paragraph 16:

> **APPLICABLE LAW; JURISDICTION AND VENUE**
>
> This agreement will be governed by the laws of the State of California. The California state [or federal] courts of Alameda County, California . . . will have exclusive jurisdiction and venue over any dispute arising out of this agreement, and [HealthTronics] hereby consents to the jurisdiction of such courts.

Exhibit F is mentioned in the body of the Distribution Agreement in Section 4, titled "Terms of Purchase of Products By Customer." Relevant here, under the subhead "Terms of Purchase Orders" in Section 4, Exhibit F is incorporated:

> To the extent consistent with the terms set forth in this Agreement, Lisa Laser USA['s] standard terms and conditions, set forth as *Exhibit F* hereto, shall be applicable to the shipment of any Product to [HealthTronics]. [HealthTronics]'s purchase orders submitted to Lisa Laser USA from time to time with respect to Products to be purchased hereunder shall be governed by the terms of this Agreement, and nothing contained in any such purchase order shall in any way modify such terms of purchase or add any additional terms or conditions.

In September 2008, Lisa Laser notified HealthTronics that it was in default for failing to use its best efforts to market and sell the products to which it had exclusivity. HealthTronics alleged that it was abiding by the minimum purchase requirements during the contract period, but that Lisa Laser had refused to provide information about new products, failed to offer a right of first refusal to distribute new products, and began to directly market new products in the United States. HealthTronics then filed suit in district court in Travis County, Texas against both Lisa USA and Lisa Germany for breach of contract and tortious interference with contract (related to confidentiality and non-solicitation agreements between HealthTronics and its former employees) and sought monetary damages and injunctive relief.

In the trial court, Lisa Laser filed a motion to dismiss for improper forum on the basis of the forum-selection clause in Exhibit F. The trial court denied the mo-

tion. Lisa Laser then sought mandamus relief and an emergency stay at the court of appeals. After originally granting the requested stay, the court of appeals denied the petition for writ of mandamus. 2009 WL 2217745. Following the denial, Lisa Laser petitioned this Court for relief.

■■■■ Mandamus relief is available when a trial court clearly abuses its discretion and relief on appeal after a final judgment is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004).[2] A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause. *In re Laibe Corp.*, 307 S.W.3d 314 (Tex.2010). Further, an appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will "vitiate and render illusory the subject matter of an appeal"—i.e., trial in the proper forum. *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex.2004) (quoting *Jack B. Anglin Co.*

*v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992)); *accord In re Laibe Corp.*, 307 S.W.3d at 316. Accordingly, we have repeatedly held that mandamus relief is available to enforce an unambiguous forum-selection clause in a contract. *See, e.g., id.; In re AIU Ins. Co.*, 148 S.W.3d at 115–19; *In re AutoNation, Inc.*, 228 S.W.3d at 665; *In re Int'l Profit Assocs. I*, 274 S.W.3d at 674; *In re Int'l Profit Assocs. II*, 286 S.W.3d at 922; *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371 (Tex.2010). In general, forum-selection clauses should be given full effect, and subjecting a party to trial in a forum other than the contractually chosen one amounts to "'clear harassment' ... injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics...." *In re AutoNation*, 228 S.W.3d at 667–68 (quoting *In re AIU Ins. Co.*, 148 S.W.3d at 117).[3]

**2.** Before this Court for the first time on appeal, Lisa Laser argues that California law applies to determine whether the forum-selection clause is applicable and whether mandamus relief is available to correct the trial court's error, as the parties chose California law in the Distribution Agreement. This Court has applied Texas law in the mandamus cases in which the parties seek to enforce a forum-selection clause, even if the contract also contains a choice-of-law clause selecting the application of another state's substantive law. *See, e.g., In re AIU Ins. Co.*, 148 S.W.3d 109, 111 (Tex.2004) (applying Texas law in a mandamus action enforce a forum-selection clause in a contract that also included a choice-of-law provision designating New York law); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558 (Tex.2004) (same, Pennsylvania law); *In re AutoNation, Inc.*, 228 S.W.3d 663, 665 (Tex.2007) (same, Florida law); *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 230–31 (Tex.2008) (same, Pennsylvania law); *In re Int'l Profit Assocs., Inc. ("Int'l Profit Assocs. I")*, 274 S.W.3d 672, 674 (Tex.2009) (same, Illinois law); *In re Int'l Profit Assocs., Inc. ("Int'l Profit Assocs. II")*, 286 S.W.3d 921, 922 (Tex.2009) (same, Illinois law). Fur-

ther, the determination of whether mandamus relief is available is a matter of procedure. The law of the forum state applies to procedural questions. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 387 & n. 17 (Tex.2008). Accordingly, we apply Texas law in determining whether mandamus relief is available in this case.

**3.** Notwithstanding Lisa Laser's invocation of California law, the parties do not allege that there are any material differences between California and Texas law when it comes to interpretation and enforcement of forum-selection clauses. In California, as in Texas, (a) the denial of a motion to dismiss or to stay pursuant to a valid forum-selection clause may be the basis for mandamus relief; (b) a mandatory forum-selection clause is to be enforced unless it is unreasonable; and (c) the plaintiff must shoulder a "heavy burden" to prove unreasonableness, and mere inconvenience and additional expense is insufficient. *See, e.g., Net2Phone, Inc. v. Superior Court*, 109 Cal.App.4th 583, 135 Cal.Rptr.2d 149, 154 (2003); *Olinick v. BMG Entm't*, 138 Cal. App.4th 1286, 42 Cal.Rptr.3d 268, 273 (2006);

In this case, HealthTronics argues that the forum-selection clause does not apply to the Texas lawsuit. First, it argues that because the clause was contained only in Exhibit F, it applies only to claims specifically related to "sales by Seller ... to HealthTronics," and not to any other claims based on the parties' relationships (such as breach of contract for failure to provide rights of first refusal or tortiously interfering with HealthTronics's contracts with its employees). Second, HealthTronics argues that the 2007 modification of the limiting language in the preamble indicates the parties' intent to limit the forum-selection clause only to disputes over sales transactions. Because all of HealthTronics's claims are directed at protecting its rights for the marketing and sale of the new lasers "to third parties" and protecting its confidential information, HealthTronics contends the claims in the Texas lawsuit are outside the scope of the clause and the Court should enforce the language of the Agreement as written and bargained for. Finally, HealthTronics argues because the plain language of the preamble to Exhibit F indicates that the exhibit applies only to sales by "Seller" [Lisa USA] to HealthTronics, the forum-selection clause does not apply to its claims against Lisa Germany, a signatory to the Distribution Agreement but an entity that was specifically omitted from the terms in Exhibit F.

In this case, HealthTronics does not argue that the forum-selection clause is unenforceable, but that it only applies to part of the contract—sales transactions between it and Lisa USA. In examining whether claims brought by the plaintiff were within the scope of the clauses, this Court held that a reviewing court should engage in a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *Int'l Profit Assocs. I*, 274 S.W.3d at 677 (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir.2008)); *In re Laibe Corp.*, 307 S.W.3d at 316. In *International Profit Associates I*, the Court borrowed from its arbitration jurisprudence to determine whether a forum-selection clause included in contracts to provide business consulting services would apply to a tort suit. 274 S.W.3d at 674. In that case, the plaintiff the consulting company and its employee for negligently providing services, fraud, and breach of duty of good faith after the consulting company's employee allegedly embezzled large sums of money from the client. The Court held that "whether claims seek a direct benefit from a contract turns on the substance of the claim, not artful pleading.... [A] claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law." *Id.* at 677 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex.2005)). Using that rationale, the Court held that the tort claims arose from the contractual relationship of the parties. *Id.*

Although *In re International Profit Associates I* discussed a tort/contract dichotomy, rather than the scope of contractual coverage, its reasoning applies in this case. HealthTronics alleges that Lisa Laser failed to inform it of new products and failed to offer it a right of first refusal to distribute new products in the United States. Lisa Laser's obligation, if any, to do so only arises from the Distribution Agreement, in which Lisa Laser agreed to

---

*Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206, 1208–09 (1976).

sell and HealthTronics to buy urological lasers pursuant to certain terms. Those terms are set out both in the body of the Distribution Agreement as well as in the Exhibits.

■ HealthTronics's textual argument—that the forum-selection clause applies only to sales "By Seller to HealthTronics" and that Section 4 of the Distribution Agreement incorporates the standard terms and conditions as "applicable to the shipment of any Product to the Distributor"—is unavailing. The Distribution Agreement and the Standard Terms and Conditions in Exhibit F are not separate, or even separable, agreements. Exhibit F does not contain price or quantity terms. *Cf.* TEX. BUS. & COM.CODE § 2.201 (setting basic terms for enforceable contracts for the sale of goods with a value over $500); *Miller v. Vaughn & Taylor Const. Co.*, 345 S.W.2d 852, 853 (Tex.Civ.App.-Fort Worth 1961, writ ref'd n.r.e.) ("A contract is not sufficiently certain to be enforced if it fails to specify the quantity of the goods to be sold."). Nor does it mention any particular product to be distributed. It is nothing more than the standard terms of purchase that would normally accompany any commercial purchase order. Likewise, the Distribution Agreement, while setting out the rough outline of the parties' obligations, is also incomplete. It requires and incorporates the additional terms from the exhibits to fully elucidate the parties' agreement. The exhibits are consecutively paginated following the body of the Distribution Agreement. The Distribution Agreement and the Exhibits were intended to be one document. And even if the exhibits have some independent significance, as this Court recognized in *In re Laibe,* "[a] contract can consist of more than one document [and d]ocuments pertain-

ing to the same transaction may be read together." *In re Laibe Corp.,* 307 S.W.3d at 317. This is a prime example of a single transaction governed by a document with multiple subparts, referencing each other, and substantially incomplete without each other, but together comprising the Agreement.

Because neither document could be considered "this Agreement" by itself, the common sense approach is to read the two documents as multiple documents describing a singular transaction, with the forum-selection clause applying to all claims arising out of the Distribution Agreement. *Int'l Profit Assocs. I,* 274 S.W.3d at 677; *see also In re Laibe,* 307 S.W.3d 314; *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34 (5th Cir.1990). Further, the forum-selection clause itself describes a scope broader that the mere sales transactions between Lisa USA and HealthTronics. It states that California shall be the forum "over *any* dispute arising out of this agreement," not merely any dispute arising out of *any particular sale.*

HealthTronics cites to two Texas court of appeals cases in support of its position that the forum-selection clause should not apply to its claims—*Apollo Property Partners, LLC v. Diamond Houston I, L.P.,* No. 14-07-00528-CV, 2008 WL 3017549, 2008 Tex.App. LEXIS 5884 (Tex.App.-Houston [14th Dist.] Aug. 5, 2008, no pet.) and *IKON Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Both are distinguishable. *Apollo Property Partners* is inapposite because the forum-selection clause at issue did not clearly mandate an Illinois forum; rather, it merely prevented either party from raising venue or personal jurisdiction arguments if an action were filed in Illinois. 2008 WL 3017549 *2-3. *IKON Office Solutions* is distinguishable because the portion of the sale agreement contain-

ing the arbitration clause (an employment agreement) was an independent, integrated agreement, and because the arbitration provision did not broadly require arbitration of all disputes between the parties. "[T]he narrow arbitration clause in this case cover[ed] only disputes *related to the termination of employment.*" *IKON Office Solutions,* 2 S.W.3d at 696 (emphasis added). Because the fraudulent inducement claims at issue in the case were not related to the termination of the individual's employment, the dispute was outside the scope of the arbitration clause.

HealthTronics also argues that a change from the original 2005 distribution agreement evidences the parties' intent for the forum-selection clause to apply only to sales transaction disputes between Health-Tronics and Lisa USA. The preamble to Exhibit F in the 2005 distribution agreement stated that the standard terms and conditions "apply except as specifically modified in the Distribution Agreement between the parties. . . ." The preamble in the amended, 2007 Distribution Agreement, which is effective for this dispute, states that the terms apply "to sales by [Lisa USA] to HealthTronics, Inc. pursuant to the Distribution Agreement between the parties." This amendment does not limit the forum-selection clause (which continues to state that the clause applies to "any disputes" between the parties) but merely describes the "standard terms and conditions." This amendment is reasonable, considering that Lisa Germany was not a party to the 2005 agreement, but is a party to the 2007 Distribution Agreement, and the amendment was necessary to identify the buyer and the seller.

HealthTronics's claims arise out of the Agreement rather than other general obligations imposed by law. That is, but for the Agreement, HealthTronics would have no basis to complain that Lisa Germany failed to offer the right of first refusal to HealthTronics to distribute new products, failed to provide HealthTronics information about new products, allowed other distributors to sell products for which HealthTronics was supposed to be the exclusive distributor, and wrongfully terminated the contract. *See In re Int'l Profit Assocs. I,* 274 S.W.3d at 678. Accordingly, the trial court erred in refusing to enforce the clause in the Texas lawsuit.

█ Next, HealthTronics contends that even if the forum-selection clause applies to its claims against Lisa USA, it does not apply to claims against Lisa Germany, because the plain language of the preamble makes Exhibit F applicable only to "sales by Seller [Lisa USA] to HealthTronics, Inc. . . . pursuant to the Distribution Agreement." As discussed above, Exhibit F is the default terms and conditions to the sales and distribution contract between Lisa Laser and HealthTronics. Because no sales actually occur between Lisa Germany and HealthTronics, it is not surprising that Lisa Germany is not mentioned in Exhibit F.

HealthTronics's claims against Lisa Germany are for breaches of the right of first refusal and exclusivity clauses in the Distribution Agreement. Lisa Germany was a signatory to the Distribution Agreement, which incorporated Exhibit F, and Health-Tronics seeks to enforce obligations of the contract in this lawsuit. A plaintiff "cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 135 (Tex.2005). In other words, HealthTronics cannot claim that Lisa Germany has obligations to Health-Tronics under the Distribution Agreement and simultaneously claim that the forum-selection clause does not apply to those claims. *See also Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 528 (5th Cir.2000) (holding, in the context of an

arbitration agreement, that "a signatory to that agreement cannot, ... 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory").

Accordingly, reading the forum-selection clause in Exhibit F in context of the whole Agreement, considering that Lisa Germany was a signatory to the Distribution Agreement, that the forum-selection clause applies to "any dispute arising out of this agreement," and that HealthTronics seeks to hold Lisa Germany responsible for obligations under the Distribution Agreement, we conclude that all disputes arising out of the Distribution Agreement against either or both defendants are to be litigated in Alameda County, California.

The forum-selection clause at issue in this case governs the forum for the dispute between HealthTronics and Lisa Laser, and the trial court abused its discretion in failing to dismiss the case based on the clause. For these reasons, and without hearing oral argument, TEX.R.APP. P. 52.8(c), we conditionally grant Lisa Laser's petition for writ of mandamus and direct the trial court to vacate its order and grant Lisa Laser's motion to dismiss. We are confident the trial court will comply, and the writ will issue only if it fails to do so.