In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-26-00092-CV

IN RE EQUITY ONE FRANCHISORS, LLC

**Original Proceeding**
**60th District Court of Jefferson County, Texas**
**Trial Cause No. 26DCCV0129**

## MEMORANDUM OPINION

In a petition for a writ of mandamus, Relator Equity One Franchisors, LLC ("Equity One," "Global," or "GlobalGreen") contends the trial court abused its discretion by granting a temporary restraining order before ruling on Equity One's Motion to Dismiss based on the forum-selection clauses in the parties' agreements, and by denying the Motion to Dismiss and refusing to enforce the parties' contractual forum-selection clauses. We temporarily stayed all further action in the trial court and obtained a response from the Real Parties in Interest, John Dishon, Kristy Dishon, Nicole Brown, Rachelle Allen, Dishon Insurance Agency d/b/a

GlobalGreen Insurance Agency, and Dishon Insurance Group LLC (collectively "Movants"). We conditionally grant mandamus relief in part.

Agreements

Equity One is a franchisor of independently owned insurance agencies. Kristy Dishon and non-party Raven Wolfe established Wolfe & Dishon Insurance Group LLC, ("Wolfe & Dishon") which in July 2017 executed a Franchise Agreement to operate a GlobalGreen Insurance Agency in Beaumont, Texas. Raven Wolfe and her spouse, non-party Keith Wolfe, executed a Guarantee of all obligations under the Franchise Agreement. The Franchise Agreement contained non-competition and non-solicitation clauses. Additionally, the Franchise Agreement contained a forum-selection clause:

> G. **<u>Governing Law and Jurisdiction.</u>** . . . GLOBAL may institute any action arising out of or relating to this Agreement in any state or federal court of general jurisdiction in the State of Missouri or the state or federal court of general jurisdiction in the state in which the Agency is located, and FRANCHISEE and guarantors irrevocably submit to their jurisdiction and waive any objection to the application of Missouri law or to the jurisdiction or venue in those Missouri courts. If FRANCHISEE institutes any action arising out of or relating to this Agreement, such suit must be brought in the Circuit Court of the County of St. Louis or in District Court of the Eastern District of Missouri so long as GLOBAL's principal place of business is located in the St. Louis Metropolitan Area. Otherwise, FRANCHISEE must institute any action arising out of or relating to this Agreement in the nearest federal court located in the state of GLOBAL's principal place of business.

On November 15, 2019, Raven Wolfe sold her interest in Wolfe & Dishon to John Dishon. In February 2020, and effective November 2019, Wolfe & Dishon

2

Insurance Group LLC, Raven Wolfe, John Dishon, Kristy Dishon, Keith Wolfe, and Equity One executed a Consent to Transfer. The Consent to Transfer executed by the Wolfes, the Dishons, Wolfe & Dishon and Equity One contained a forum-selection clause:

> 10. <u>Forum and Choice of Law</u>. Any dispute arising under this Agreement shall be heard in the state and federal courts located in the County of St. Louis, State of Missouri, and the parties hereby waive any defense or objection they may have to the jurisdiction of such court. This Agreement shall be interpreted in accordance with the laws of the State of Missouri. Should any provision of this Agreement be found to violate the statutes or court decisions of the State of Missouri or of the United States, such provision shall be deemed to be amended to comply with and conform to such statutes or court decisions to affect the intent of the parties hereunder.

In consideration for the Consent to Transfer, Kristy Dishon and John Dishon executed a Guarantee Relating to the Franchise Agreement, wherein they agreed "to be personally bound by, and personally liable for the breach of each and every provision in the Franchise Agreement" and further stated that the Guarantors "hereby consent to the applicability of the venue and jurisdiction provisions in the Franchise Agreement."

Effective as of November 5, 2025, Wolfe & Dishon Insurance Group LLC, John Dishon, Kristy Dishon, and Equity One executed a Consent to Transfer John Dishon's interest in the Franchise Agreement to Kristy Dishon. The conditions of the 2019 Guarantee were "not released and remain in full force and effect." John Dishon acknowledged that his surviving obligations under the Franchise Agreement

3

"include, without limitation, the non-competition and non-solicitation restrictions" in the Franchise Agreement "which, in part, prohibit him from directly or indirectly offering and selling insurance within a twenty-five (25) mile radius of the Agency, and prohibit him from contacting the Customers . . . or from using the names, contact information or any other data relating to any of the Customers" after the transfer. The 2025 Consent to Transfer contained a forum-selection clause:

> 10. <u>Forum and Choice of Law</u>. Any dispute arising under this Agreement shall be heard in the state and federal courts located in the County of St. Louis, State of Missouri and the parties hereby waive any defense or objection they may have to the jurisdiction of such court. This Agreement shall be interpreted in accordance with the laws of the State of Missouri. Should any provision of this Agreement be found to violate the statutes or court decisions of the State of Missouri or of the United States, such provision shall be deemed to be amended to comply with and conform to such statutes or court decisions to affect the intent of the parties hereunder.

Cease and Desist Letter

On January 14, 2026, counsel for Equity One sent a Cease and Desist Letter to Dishon Insurance Group LLC and John Dishon. The letter stated in part:

> GlobalGreen recently discovered that you have opened an office that offers and/or sells insurance that is not a duly licensed franchisee of GlobalGreen, nor approved by GlobalGreen. GlobalGreen understands that office will be located within, and service customers within, a twenty-five (25) mile radius of the GlobalGreen Franchise and that is in close proximity to another GlobalGreen franchisee. GlobalGreen also understands that you recently hired at least one person who, until hired by you, was an employee of a GlobalGreen franchisee in close proximity to your new insurance business. GlobalGreen further understands that person took GlobalGreen's Confidential Information and Trade Secrets when she left that

4

franchisee's employment and joined your new insurance business. Additionally, GlobalGreen understands that you recently hired at least one person who, until hired by you, was an employee of the GlobalGreen Franchise.

In the letter, Equity One threatened legal action and demanded:

> GlobalGreen is very serious about enforcing its contractual rights. Your conduct has put you at risk of a lawsuit in the United States District Court for the Eastern District of Missouri for breach of contract, fraudulent inducement, unfair competition, conversion, theft of trade secrets, and conspiracy to steal trade secrets, among other claims. You have five (5) business days after receipt of this notice to provide written confirmation that you have ceased all activities prohibited by the Franchise Agreement, the Guarantee, any other agreement with GlobalGreen, and applicable law, and that you will not "perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any business that offers or sells insurance" except as a duly licensed franchisee of GlobalGreen.

Application for Temporary Restraining Order

At 3:11 p.m. on January 22, 2026, in a suit styled *In re* NICOLE BROWN*, et al. Movants*, John Dishon, Kristy Dishon, Nicole Brown, Rachelle Allen, Dishon Insurance Agency LLC d/b/a GlobalGreen Insurance Agency, and Dishon Insurance Group LLC filed an Application for Temporary Restraining Order and Injunction. The District Clerk docketed the pleading as Trial Cause Number 26DCCV0127 and assigned the case to the 172nd Judicial District Court, in Jefferson County, Texas. At 4:13 p.m. on January 22, 2026, Movants filed a Notice of Non-Suit for Trial Cause Number 26DCCV0127.

At 4:48 p.m. on January 22, 2026, Movants filed, with the Jefferson County District Clerk, a nearly identical Application for Temporary Restraining Order and Injunction styled *In re* RACHELLE ALLEN*, et al. Movants*, John Dishon, Kristy Dishon, Nicole Brown, Rachelle Allen, Dishon Insurance Agency LLC d/b/a GlobalGreen Insurance Agency, and Dishon Insurance Group LLC, which was docketed as Cause Number 26DCCV0129 and assigned to the 60th Judicial District Court, in Jefferson County, Texas. The Application names as Respondents Equity One, Growth Curve Capital, ETL Insurance Agency LLC d/b/a GlobalGreen Insurance Agency, and Emily Lowe. The Application states that in September 2025 it was announced that Equity One was selling its business to Brightway Insurance, the transaction markedly and negatively affected franchises by reducing revenues and commissions to their employees, and that infringing on the ability of John Dishon, Kristy Dishon, Nicole Brown, and Rachelle Allen to perform their work as insurance professionals would irreparably harm them because their financial stability depends on their ability to be continually employed. An affidavit by Paul F. Ferguson Jr. is attached to the Application, and it states that the "facts stated in the foregoing motion for temporary restraining order are based upon my person[al] knowledge, and are true and correct to the best of my knowledge."

At 12:10 p.m. on January 23, 2026, the judge presiding in the 60th District Court signed an ex parte Temporary Restraining Order ("TRO") effective upon the

6

filing of a $500 Bond. The TRO restrains Equity One, GlobalGreen Insurance Agency, Growth Curve Capital, Brightway Insurance, ETL Insurance Agency d/b/a GlobalGreen Insurance Agency, and Emily Lowe from numerous acts, including:

1. Impeding or prohibiting any Movant from contacting or soliciting any current or former client of any Movant.

2. Impeding or prohibiting any Movant from using or accessing any client list that contains or includes any current or former clients of any Movant.

3. Impeding or prohibiting any Movant from using or accessing any data or information (including any electronically stored data or information) regarding any current or former clients of any Movant.

4. Impeding or prohibiting any Movant from using or accessing any data or information (including any electronically stored data or information) of any insurance company or agency of which any Movant has been an owner, employee or franchisee.

5. Enforcing, or attempting to enforce, against any Movant any non-compete or nonsolicitation provision that does or may exist in any agreement.

6. Disparaging, directly or indirectly, any Movant, any business owned or operated by any Movant or any person employed by any Movant.

7. Denying or interfering with Mr. Dishon's ability to operate and maintain an independent insurance agency;

8. Denying or interfering with Mr. Dishon's independent insurance agency practice in Orange, Texas;

9. Denying or interfering with Nicole Brown's current contractual agreement and contractual relationship with Mr. Dishon and Mr. Dishon's independent insurance agency;

7

10. Denying or interfering with Rachelle Allen's current contractual relationship with Mr. Dishon and Mr. Dishon's independent insurance agency;

11. Reducing, stopping, terminating, threatening to terminate, or refusing to continue in the franchise agreement with Kristy Dishon;

12. Denying or interfering with Kristy Dishon's current franchise agreement due to any dispute between Mr. Dishon and Respondents or based upon any lawful actions taken by Mr. Dishon in operating his independent insurance agency;

13. Denying or interfering with Mr. Dishon's ability to access, maintain, use or reference his client list and/or book of business at his independent insurance agency;

14. Denying or interfering with Mr. Dishon's ability to access, maintain, use or reference his leads or prospects at his independent insurance agency;

15. Denying or interfering with Mr. Dishon's ability to access, contact and/or communicate with any or all current policy holders, leads and/or prospects of his independent insurance agency;

16. Contacting and/or communicating with any current policy holder, lead and/or prospect of Mr. Dishon's independent insurance agency;

17. Denying or interfering with Kristy Dishon's ability to access information regarding the revenues, expenses and all other financial information regarding Kristy Dishon and/or her agency;

18. Reducing, stopping or refusing to continue to provide Kristy Dishon with her usual and customary compensation under her franchise agreement;

19. Destroying, altering or modifying any documents or materials (including electronically stored information) regarding Kristy Dishon's agency, its work and its financial condition;

20. Destroying, altering, or modifying any documents or materials (including electronically stored information) regarding the meetings and agreements that took place between Mr. Dishon and any Respondents, including but not limited to the Transfer Agreement;

21. Destroying, altering or modifying any documents or materials (including electronically stored information) regarding the Dishon's work and work performance for or on behalf of Equity One/GlobalGreen;

22. Destroying, altering or modifying any documents or materials (including electronically stored information) regarding the termination of the franchise agreement with Mr. Dishon and his release from obligations thereunder;

23. Destroying, altering or modifying any documents or materials (including electronically stored information) regarding the Franchise Agreement, Consent to Transfer Agreement, and procedures applicable when a franchisee is released from a franchise agreement;

24. Threatening, attempting, or taking any action to terminate, close, suspend, or otherwise interfere with Kristy Dishon's franchise based upon John Dishon's operation of his independent insurance agency or his employment of Rachelle Allen, Nicole Brown, or any other former Equity One/Global Green agents;

25. Enforcing or attempting to enforce any non-compete provisions, restrictive covenants, or other contractual obligations against John Dishon that were part of any franchise agreement;

26. Threatening, initiating, or maintaining any legal action against John Dishon based upon his operation of an independent insurance agency;

27. Retaliating against Kristy Dishon or her franchise for any actions taken by John Dishon in the operation of his independent insurance agency, including but not limited to his hiring of Rachelle Allen, Nicole Brown, or other former Equity One/Global Green agents who voluntarily sought employment with Mr. Dishon;

9

28. Making, publishing, ratifying, or causing to be published any false, defamatory, or disparaging statements about John Dishon, Kristy Dishon, Rachelle Allen, Nicole Brown, or Mr. Dishon's independent insurance agency;

29. Permitting, encouraging, condoning, ratifying, or failing to prevent Emily Lowe or any other agent, employee, or representative of Equity One/Global Green from making defamatory, false, or disparaging statements about Rachelle Allen, Nicole Brown, Kristy Dishon, John Dishon, or any other employee of Mr. Dishon's independent insurance agency;

30. Interfering with John Dishon's business relationships, including but not limited to his relationships with Rachelle Allen, Nicole Brown, clients, prospective clients, insurance carriers, vendors, or other business associates;

31. Interfering with Kristy Dishon's business relationships, franchise operations, client relationships, or vendor relationships;

32. Making baseless allegations, false statements, or threats regarding the misappropriation of trade secrets, confidential information, or other wrongdoing against John Dishon, Nicole Brown, Rachelle Allen, or any other employee of Mr. Dishon's independent insurance agency;

33. Attempting to restrict, limit, or interfere with the employment relationships between John Dishon and Rachelle Allen, Nicole Brown, or any other former Equity One/Global Green agents who voluntarily and without solicitation sought employment with Mr. Dishon's independent insurance agency;

34. Taking any retaliatory action against John Dishon, Kristy Dishon, or their respective businesses based upon the exercise of their lawful rights to operate insurance agencies and employ licensed insurance agents;

35. Violating the terms of the Consent to Transfer Agreement executed by Equity One's authorized representative, Max Staplin, on November 25, 2025, by which John Dishon was released from all obligations under

10

the franchise agreement except those that expressly survive termination;

36. Violating the terms of the Consent to Transfer Agreement executed on November 25, 2025, whereby John Dishon transferred his ownership interest to Kristy Dishon in exchange for his release from the franchise agreement;

37. Threatening John Dishon or Kristy Dishon with any adverse action, legal proceedings, or interference with their business operations based upon John Dishon's operation of his independent insurance agency or his employment of licensed insurance agents;

38. Contacting, soliciting, or communicating with employees of John Dishon's independent insurance agency, including Rachelle Allen and Nicole Brown, for the purpose of interfering with their employment relationships or inducing them to terminate their employment with Mr. Dishon; and

39. Taking any other action designed to harm, interfere with, or impede the lawful business operations of John Dishon's independent insurance agency in Orange, Texas or Kristy Dishon's franchise.

The Bond was filed at 12:26 p.m. on January 23, 2026. The Bond recites that Paul F. Ferguson Jr., as principal, and Michelle Ferguson as surety, acknowledge themselves bound to pay to Equity One Franchisors, LLC, GlobalGreen Insurance Agency, and Emily Lowe the sum of $500.00 conditioned that Paul F. Ferguson Jr. will abide by the decision made in the case and will pay all sums of money and costs that may be adjudged against Movants if the TRO should be dissolved in whole or in part and if the Respondents suffer damage thereby.

11

At 12:33 p.m. on January 23, 2026, the judge presiding in the 172nd District Court signed an Order Granting Notice of Non-Suit Without Prejudice in Trial Cause Number 26DCCV0127.

Equity One's Motions

On January 30, 2026, Equity One filed in Trial Cause Number 26DCCV0129 a Motion to Dismiss for Improper Forum based on the forum-selection clauses in the parties' agreements.

Subject to its Motion to Dismiss, Equity One also moved to reconsider or dissolve the TRO, arguing in part that the TRO is invalid because it is impermissibly predicated on the affidavit of Movants' counsel, it is vastly overbroad and unlawful in scope, the trial court is not the proper forum to issue any relief in this matter, and the Movants had improperly manipulated the system to select the judge.

Subject to its Motion to Dismiss, Equity One filed Special Exceptions to the Application for TRO and Injunction, complaining among other things that the Application did not plead any grounds of any cause of action and failed to include specific facts shown by affidavit or by verified complaint that immediate and irreparable loss or damage will result to the applicants before notice can be served and a hearing held. Equity One filed a Notice of Hearing on its motion for February 5, 2026, at 9:00 a.m., the same time and date set for the Temporary Injunction Hearing.

Opposing and Extending the TRO

On February 2, 2026, the Movants filed a motion to extend the TRO for an additional two weeks. They contended witnesses, including one of the Movants, were unavailable for the February 5, 2026 Temporary Injunction hearing date. They scheduled the hearing on the motion for extension for February 5, 2026, at 9:00 a.m.

Subject to its Motion to Dismiss, Equity One filed a Response in Opposition to Application for Temporary Restraining Order and Injunction. Equity One argued that the proceeding must be reassigned to the 172nd District Court as required by Jefferson County Local Rule 6D and that its Motion to Dismiss must be addressed before the trial court considers extending the TRO. Equity One contended Movants failed to plead and prove a cause of action against any defendant, a probable right to the relief sought, or irreparable injury in the interim. Equity One complained that the TRO precludes them from exercising their own legal rights and protecting their trade secrets, assets, and property. In a separate filing, Equity One argued that the TRO should not be extended because it fails to state why the order was granted without notice, does not describe the injury and why it is irreparable, is not supported by an affidavit that recites the underlying evidence and explains what the damage is and why it is irreparable, does not state the date that it expires, and improperly restrains them from conducting lawful activities and exercising rights.

Movants filed two affidavits on the morning of February 5, 2026. The Affidavit of John Dishon Jr. states, "I have read the Application for Temporary Restraining Order and Injunction and the facts and statements contained therein are true and accurate." Facts that John Dishon relied upon to assert that requiring them to litigate in Missouri would cause significant hardship and irreparable harm included: (1) he and his wife Kristy operated Dishon Insurance Agency, he left that business in 2025 and started Dishon Insurance Group, which is currently located in Kirbyville; (2) he owns four other businesses and manages more than sixty employees; (3) his wife Kristy operates and manages Dishon Insurance Agency in Beaumont, Texas; (4) their three children are active in school, extracurricular activities and sports, and requiring them to litigate in Missouri would take them away from their children and their activities and would require them to impose on others to care for the children; (5) St. Louis is a 12-hour drive from their home; and (6) they would be deprived of their lawyer if they are forced to litigate in Missouri.

Movants' second affidavit, from Paul "Chip" Ferguson, states, "The statements contained herein are true and correct and are based on my personal knowledge." Ferguson states that he has tried cases in 25 states, including Missouri, and he is experienced and knowledgeable of the significance and difficulties of trials in foreign venues. According to Ferguson, trying *Dishon v. Equity One Franchisors, LLC* would be significantly inconvenient because all six Movants and two

14

Respondents are in the Beaumont area, there are no direct flights from Beaumont to St. Louis, and travel is costly and expensive for parties, attorneys, support staff, and witnesses. The events that form the basis of the litigation occurred in Beaumont, most witnesses live in the Golden Triangle and are not subject to subpoena in Missouri, and litigating the case in Missouri jeopardizes their ability to be represented by counsel of their choosing.

On February 5, 2026, the trial court convened the temporary injunction hearing. Movants immediately requested a two-week extension of the TRO because Kristy Dishon was recuperating from surgery. Equity One objected, argued the TRO was invalid because it was not supported by the affidavit of a person with knowledge of the facts, asked the trial court to dissolve the TRO if the hearing was reset, and asked the trial court to rule on their Motion to Dismiss. Counsel for Equity One expressed concern about agreeing to an extension of the TRO. Movants agreed that Respondents had not waived their pending motions.

On February 5, 2026, the trial court granted the motion to extend the TRO and set a temporary injunction hearing for February 18, 2026.

On February 9, 2026, Equity One filed a supplemental brief in support of its motion to dismiss. In the supplemental brief, Equity One argues that by entering into a forum-selection clause, the parties effectively represent to each other that the

15

agreed forum is not so inconvenient that enforcing the clause will deprive either party of their day in court.

Equity One gave Notice of Hearing for a February 10, 2026, hearing on their Motion to Dismiss for Improper Forum, Special Exceptions, and Emergency Motion to Reconsider or Dissolve Ex Parte Temporary Restraining Order Subject to Motion to Dismiss for Improper Forum.

On February 5, 2026, the trial court held a hearing on the Motion to Dismiss for Improper Forum. Equity One argued that the parties agreed to a Missouri forum-selection clause in three different agreements that were executed after the parties had an opportunity to discuss them with an attorney, that Equity One has a vested interest in avoiding having to litigate with franchisees all over the country, that the Dishons could have negotiated the forum-selection clause as part of the negotiation of the franchise Agreement and the Consents to Transfer, and that Movants' complaint that litigating in Missouri would be costly provides insufficient grounds to prohibit enforcement of the forum-selection clause signed by insurance professionals who deal with policy agreements and understand the details of contractual matters.

Movants argued the Franchise Agreement's forum-selection clause was inconspicuous, met the definition of an adhesion contract, was not signed by any of the parties before the trial court, and failed because it did not require Equity One to file suit in a single exclusive forum. Movants argued enforcing the forum-selection

16

clause would split the litigation because Brown and Allen signed no agreement with a forum-selection clause. Movants also complained that Equity One violated the TRO by filing a lawsuit in a federal court in Missouri.

In reply, Equity One argued the two Consent Agreements required all parties to file suit in Missouri, the petition for temporary restraining order and injunction stated no claim by Brown or Allen, and since they are agents of the franchisees, the entire case could probably be tried in Missouri. Equity One argued the TRO improperly prohibited the exercise of its legal rights and remedies under the contract.

On February 17, 2026, the trial court denied Equity One's Motion to Dismiss for Improper Forum.

On February 18, 2026, the parties announced a Rule 11 agreement, which Movants' counsel described as follows:

> . . . This agreement will serve, for the purposes of procedurally, as a Rule 11; but really what we're doing is amending and extending the TRO.
> I will take on the laboring or the initial draft and provide it to opposing counsel so we can get something suitable to you for you to enter over the next day or two.
> So, first of all, the entry of the extending TRO shall not and will not constitute a waiver of any legal rights of any party nor will it constitute any admission by any party to any allegation in this matter. That's the first part.
> Second is we will amend -- where is it? I want to be sure I give them the right. . .
> In the original TRO, Item 26, which had to do with the threat, initiation, or maintenance of any legal action, we are going to delete that provision and insert in its place "Nothing herein shall prohibit any party hereto from taking any legal action or otherwise pursuing legal

remedies in a court of law." So we will delete and replace with that language.

Next, we will add at the bottom of the laundry list in the TRO that "Nothing herein shall prevent any party from conducting business in the normal course of their business, including but not limited to" --

Engagement?

MR. HENNEMAN: I think that's right.

MR. FERGUSON: -- "or engaging with clients of any party."

. . . .

Lastly, the amended and extended temporary restraining order will be extended for 30 days from today unless any party notifies the others of its intention to set a hearing on the temporary injunction. That notice requires two weeks' notice. So we will meet within 30 days, and I'll get with the Court to get a hearing date.

. . . .

One issue that has come up in the litigation is whether or not one of the movants, Nichole Brown, had obtained, emailed to herself, documents that the respondents claim to be confidential or trade secrets and things of that nature. Those documents, whatever was emailed, do not exist. They have been deleted, destroyed, sent to places that we cannot retrieve them and have no access to them.

The other thing about those, at no point in time were those documents shared with or shown to Mr. Dishon.

Now, as a matter of clarification on the documents, there was a cease-and-desist letter that was sent to Ms. Brown that included as the attachments those documents in paper form. I have and now am instructing Ms. Brown to destroy those documents so she has no copy of any of those materials.

MR. HENNEMAN: You're going to maintain your litigation copies moving forward?

MR. FERGUSON: I've got to maintain my copy, but its going to stay in my files.

MS. AMUNY: Yes.

MR. FERGUSON: Okay.

THE COURT: All right.

MR. HENNEMAN: Yeah. We want to make sure, also, that you agree that she won't destroy anything else that we don't know about, that you don't know about. She's not going to destroy anything additional. She --

18

MR. FERGUSON: No. Well, look, we understand we operate -- although I don't know of a preservation or litigation hold letter that's been sent, but we understand -- and all parties understand -- that we have a general obligation to maintain any potentially relevant document or information. I expect my clients to do it, and I expect y'all's clients to do it. And I think we have to date.

The parties failed to agree on language for an agreed order extending the TRO. On February 26, 2026, the trial court signed an amended TRO. The Amended TRO extended the original TRO for thirty days from the date of the Amended TRO and set the Temporary Injunction hearing for March 31, 2026. The Amended Order stated:

> 2. The entry of this Order shall not constitute waiver of any legal rights or defenses, or admission by any party to the allegations made herein.

> 3. Nothing In this Order shall prevent any party from conducting the normal course of their respective business including the engagement with the party's clients.

> 4. Nothing herein shall prohibit any party hereto from taking any legal action or otherwise pursuing legal remedies in a court of law.

The Amended Order restrained Equity One, GlobalGreen Insurance Agency, Growth Curve Capital, Brightway Insurance, ETL Insurance Agency and Emily Lowe from each act enumerated in the original TRO, with the exception of Item 37, which the Amended Order stated was "Deleted by agreement of the parties." The Amended TRO did not mention a bond.

19

Mandamus Standard and Applicable Law

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (internal quotations omitted). A trial court also abuses its discretion if it fails to correctly analyze or apply the law, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135; *Walker*, 827 S.W.2d at 840. "A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding).

We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments, considering whether extending mandamus relief will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). "[M]andamus relief is available to enforce an unambiguous forum-selection clause in a contract." *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 883.

Equity One contends the trial court abused its discretion by granting the Motion to Extend the TRO before ruling on Equity One's Motion to Dismiss for Improper Forum. The Real Parties in Interest contend the trial court did not abuse its discretion because Equity One agreed to extend the TRO.

Equity One also argues the trial court abused its discretion by denying its Motion to Dismiss for Improper Forum and refusing to enforce the forum-selection clause after the Real Parties in Interest (the Movants) failed to meet their burden of a clear showing of the exceptional circumstances required to overcome the presumption that the forum-selection clauses in the parties' agreements are valid and enforceable. The Real Parties in Interest (the Movants) contend Equity One failed to prove that the forum-selection clauses call for an exclusive forum and that the agreement applies to the claims made, and the Real Parties in Interest (the Movants) contend they met their secondary burden justifying the denial of the Motion to Dismiss.

## Contractual Forum Selection

"Contractual forum-selection clauses are generally enforceable in Texas." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016). A trial court that refuses to enforce such an agreement abuses its discretion absent clear evidence that "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for

reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231-32 (Tex. 2008).

Without citation to authority, Movants contend Equity One failed to meet its threshold burden of showing a contractual forum-selection clause applies to the parties' claims. We conclude, however, that Movants' own Application for Temporary Restraining Order and Injunction establish that the dispute arises out of the Franchise Agreement and the Consent Agreements. Under "Operative Facts," Movants state, "In 2017, Kristy Dishon and non-party Raven Wolfe established Wolfe Dishon Insurance Group LLC as a Global Green franchise for the purposes of selling and providing insurance services," "[s]ubsequently, Raven Wolfe transferred her interest in that franchise to John Dishon and that franchise was re-branded as [Dishon Insurance Agency LLC]," "John Dishon and Kristy Dishon owned and operated that franchise equally until 2025 when events transpired that led to John Dishon transferring his interest in [Dishon Insurance Agency LLC] to Kristy Dishon and opening his own non-affiliated independent insurance agency as [Dishon Insurance Group LLC]" and

> John Dishon and Kristy Dishon decided that their best interests were served by John Dishon exiting [Dishon Insurance Agency LLC] and transferring his interest to Kristy Dishon. John Dishon approached Global Green and Brightway regarding same. As a result, Global Green

22

and Brightway agreed to these events occurring. John Dishon then established and opened [Dishon Insurance Group] LLC.

Furthermore, in their Application for Temporary Restraining Order and Injunction, Movants alleged the "wrongful conduct" by the Respondents included "[a]ccusing one or more Movants of violating written agreements between said Movants and Global Green and/or Brightway[,]" "[t]hreatening to terminate or cancel the existing contract with Kristy Dishon and Dishon Insurance Agency[,]" and "[d]emanding that John Dishon and Dishon Insurance Group cease all activities related to selling or providing insurance products." The irreparable harm Movants alleged they would suffer unless the trial court issued a temporary restraining order include: "[i]nterference with John Dishon and Kristy Dishon's business, professional and fiduciary relationships with his clients and customers and thereby subjecting them to financial and legal liabilities[,]" "[l]oss of John Dishon and Kristy Dishon's compensation, said compensation being the primary source of income that is used to support and keep safe them and their family, including their three young children[,]" "[t]hreatened termination of Kristy Dishon's franchise[,]" and "loss of Kristy Dishon's franchise[.]" These alleged instances of wrongful conduct and irreparable harm are directly related to Equity One's demand for compliance with the terms of the Franchise Agreement and the Consent Agreements.

Movants argue Equity One failed to demonstrate that the forum-selection clause applies to the "claims" brought in the Application for Temporary Restraining

23

Order and Injunction. The action brought in the trial court was an application to restrain Equity One from exercising its rights under the Franchise Agreement and the Consent Agreements. For example, Movants requested and obtained an order restraining Equity One from "[e]nforcing, or attempting to enforce, against any Movant any non-compete or nonsolicitation provision that does or may exist in any agreement[,]" "[d]enying or interfering with Kristy Dishon's current franchise agreement due to any dispute between Mr. Dishon and Respondents[,]" "[t]hreatening, attempting, or taking any action to terminate, close, suspend, or otherwise interfere with Kristy Dishon's franchise based upon John Dishon's operation of his independent insurance agency or his employment of Rachelle Allen, Nicole Brown, or any other former Equity One/Global Green agents[,]" "[e]nforcing or attempting to enforce any non-compete provisions, restrictive covenants, or other contractual obligations against John Dishon that were part of any franchise agreement[,]" and "[v]iolating the terms of the Consent to Transfer Agreement executed . . . on November 25, 2025[.]" As pleaded by Movants, the Application for Temporary Restraining Order and Injunction explicitly arises out of the agreements that contain forum-selection clauses.

Movants argue that "[a]ny fair reading" of the Application demonstrates that Movants have extra-contractual claims for violations of the Texas Deceptive Trade Practices Act, fraud, defamation, injury to reputation, tortious interference with

24

existing and prospective business relationships, and violations of the Temporary Restraining Order. The Application for Temporary Restraining Order and Injunction identifies no cause of action either by name or by alleging the elements of a cause of action. An original pleading which sets forth a claim for relief shall contain a short statement of the cause of action sufficient to give fair notice of the claim involved. Tex. R. Civ. P. 47. "A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). Here, Movants' Application for Temporary Restraining Order and Injunction sought a specific remedy—injunction—and nothing in the application gave Equity One notice that Movants would seek to recover damages for violating the Texas Deceptive Trade Practices Act, fraud, defamation, injury to reputation, or tortious interference with existing and prospective business relationships.

Citing *Master Woodcraft Cabinetry, LLC v. Hernandez Consulting, Inc.* No. 2:22-CV-00098-JRG, 2023 U.S. Dist. LEXIS 12790, 2023 WL 416277 (E.D. Tex. Jan. 25, 2023) (mem. op.), Movants argue that the trial court could deny the Motion to Dismiss because Equity One failed to establish which one of the three forum-selection clauses in the Franchise Agreement and the two Consent Agreements controls. This argument presumes the agreements contain conflicting forum-selection clauses, as was the case in *Master Woodcraft Cabinetry*. *See id.* They do

25

not. The Franchise Agreement and the Consent Agreements require the franchisee to file suit in Missouri. The trial court could not in its discretion deny the Motion to Dismiss and allow a dispute arising under the Franchise Agreement to be litigated in Texas based on a non-existent conflict between competing forum-selection clauses.

Movants argue that Equity One failed to demonstrate that the forum-selection clause was exclusive. They cite a case in which the plaintiff relied on a "worldwide jurisdiction" clause to establish personal jurisdiction over the non-resident defendants. *See Pappie v. Batra*, No. 14-21-00290-CV, 2022 WL 1671100, at *2 (Tex. App.—Houston [14th Dist.] May 26, 2022, no pet.) (mem. op.). The appellate court recognized that the requirement of personal jurisdiction can be waived, and that a defendant may submit to personal jurisdiction of a court otherwise lacking such jurisdiction over him by a contractual forum-selection clause. *Id*. at *8. The appellate court held that the forum-selection clause that allowed a suit to be filed anywhere does not establish that the parties agreed on Texas as an exclusive forum in the event of a dispute. *Id*.

The Franchise Agreement provides that "[i]f Franchisee institutes any action arising out of or relating to this Agreement, such suit must be brought in the Circuit Court of the County of St. Louis or in District Court of the Eastern District of Missouri" so long as the Franchisor's principal place of business is located in the St.

Louis Metropolitan Area. The 2019 and 2025 Consent Agreements require that "[a]ny dispute arising under this Agreement shall be heard in the state and federal courts located in the County of St. Louis, State of Missouri[.]" In each instance, the selection of a state or federal court in St. Louis County or the Eastern District of Missouri is mandatory and not merely permissive. Movants argue the use of the word "may" in the forum-selection clause is fatal to exclusivity, but the sentence that uses the word "may" applies to actions filed by the Franchisor, whereas the sentence that applies to the Franchisee uses the word "must."

Movants contend they provided evidence to support their argument that enforcement of the forum-selection clause would be unreasonable and unjust, Missouri would be seriously inconvenient for trial, and moving this litigation to Missouri contravenes public policy. They argue their evidence was uncontroverted and that this Court must defer to the trial court on the resolution of all questions of fact.

"[I]nconvenience in litigating in the chosen forum may be foreseeable at the time of contracting, and when that is the case, 'it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *In re AIU Ins. Co.*, 148 S.W.3d 109, 113 (Tex. 2004) (orig. proceeding) (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 2 (1972)).

27

"By entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *In re Lyon Fin. Servs.*, 257 S.W.3d at 234. "If merely stating that financial and logistical difficulties will preclude litigation in another state suffices to avoid a forum-selection clause, the clauses are practically useless." *Id.*

For instance, the Texas Supreme Court held the plaintiff failed to carry its heavy burden of clearly showing it would be deprived of its day in court with testimony that daily operations of the business would basically cease if it were required to pursue a lawsuit in the contracted-for forum state. *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (orig. proceeding). In another case, the plaintiff's claims that her chronic health problems would preclude her from prosecuting her claims against the two defendants in two different states failed to meet the sort of extreme circumstances that would be required to avoid enforcement of a forum-selection clause. *In re ADM Investor Servs.*, 304 S.W.3d 371, 375-376 (Tex. 2010) (orig. proceeding).

To support the trial court's decision to deny Equity One's Motion to Dismiss, Movants rely upon John Dishon's statements that he and his wife each operate an insurance agency in Southeast Texas, he supervises sixty employees, they have three children who engage in many activities, it takes 12 hours to drive to St. Louis, and

their lawyer might not represent them if they are forced to litigate in Missouri. Movants also rely on statements by their lawyer, who has litigated in Missouri in the past and attests that trying *Dishon v. Equity One Franchisors, LLC* in Missouri would be significantly inconvenient because all the Movants, some Respondents, and most witnesses are located in Southeast Texas and will incur expensive travel costs if the case is tried in Missouri.

The normal demands of running a business and raising a family are not the sort of inconveniences that make a forum-selection clause unenforceable. Movants describe the impact they believe litigating in Missouri will have on their lives, but they have not shown that litigating in Missouri would preclude them from petitioning for injunctive relief or effectively deny them their day in court. Assuming the trial court resolved all questions of fact in Movants' favor, we conclude as a matter of law that those facts fail to establish the selected forum would be seriously inconvenient for trial, or that litigating in Missouri would be unreasonable or unjust. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 231-32.

Movants argue Texas has a strong public policy in providing its citizens with a local forum to litigate disputes involving local conduct and a strong interest in policing the method and manner of conducting the business of insurance in Texas. They also argue that sending some, but not all, of this litigation to Missouri would require two courts to do the work of one. But, under "our controlling precedents on

29

forum-selection clauses, the parties' bargained-for agreement merits judicial respect." *In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) (orig. proceeding). Equity One has an interest in certainty regarding where disputes brought by its franchisees will be resolved and negotiated for that certainty.

"[F]orum-selection clauses are enforceable, and the party challenging the forum-selection clause bears a heavy burden of proof." *In re Int'l Profit Assocs.*, 286 S.W.3d 921, 923 (Tex. 2009) (orig. proceeding). We conclude that Movants failed to meet their heavy burden to establish that enforcement would be unreasonable or unjust, that enforcement would contravene a strong public policy of the forum where the suit was brought, or that the selected forum would be seriously inconvenient for trial.[1] *In re Lyon Fin. Servs, Inc.*, 257 S.W.3d at 231-32.

John Dishon, Kristy Dishon, and Dishon Insurance Agency LLC d/b/a GlobalGreen Insurance Agency are bound by the terms of the Franchise Agreement and the Consent Agreements. John and Kristy are signatories to the 2019 Consent Agreement and executed a Guarantee Relating to the Franchise Agreement. The Franchise Agreement is fully applicable to Dishon Insurance Agency, LLC as the Franchisee Agency, which under the name Wolfe Dishon Insurance Group, LLC is a signatory to the 2025 Consent Agreement, as are John Dishon and Kristy Dishon.

---

[1]In their response to the mandamus petition, Movants argue they provided evidence for three of the four factors from *In re Lyon Financial Services*.

Nicole Brown, Rachelle Allen, and Dishon Insurance Group LLC do not appear to be parties to the Franchise Agreement or the Consent Agreements, and the mandamus record does not include an agreement between Equity One and these three Movants. We conclude the trial court abused its discretion by denying the Motion to Dismiss as to John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC, but that Equity One has not shown that the trial court abused its discretion by denying the Motion to Dismiss as to Nicole Brown, Rachelle Allen, and Dishon Insurance Group LLC. We note that the trial court has not yet ruled on Equity One's Special Exceptions, and that it could not do so while our order granting temporary relief was in force. Once proceedings in the trial court recommence, the trial court may take up the special exceptions and other matters that might be before the trial court, but only after the trial court signs an order granting the Motion to Dismiss as to John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC.

Temporary Restraining Order

Equity One contends the trial court also abused its discretion by granting the Motion for Extension of Temporary Restraining Order before ruling on the Motion to Dismiss. After Equity One filed its Motion to Dismiss, a Motion to Reconsider or Dissolve ex Parte Temporary Restraining Order, and Special Exceptions, and issued a Notice of Hearing for February 5, 2026, Movants filed a Motion for Extension of Temporary Restraining Order due to unavailability of certain Movants and other

unidentified witnesses and issued a Notice of Hearing for February 5, 2026. Citing *In re MetroPCS Communications, Inc.*, 391 S.W.3d 329, 339-40 (Tex. App.—Dallas 2013, orig. proceeding), Equity One argues the trial court abused its discretion by granting injunctive relief without first ruling on Equity One's motion respecting the forum-selection clauses. They argue they have no adequate remedy by appeal because the trial court extended the TRO indefinitely, and without mandamus relief the trial court will be free to grant a temporary injunction which would subject Equity One to the harassment and delay of an accelerated appeal.

The temporary restraining order expired March 28, 2026. In light of our holding that the trial court abused its discretion by failing to grant the Motion to Dismiss as to the parties that are bound by the forum-selection clauses, we also find that the trial court abused its discretion by entering the Order extending the TRO with respect to those parties. We are confident that any further abuse of discretion can be prevented by requiring the trial court to sign an order granting the Motion to Dismiss as to John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC. before any other proceedings in the trial court can occur.

## Conclusion

We conclude the forum-selection clauses are enforceable against John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC, that the trial court abused its discretion by denying Equity One Franchisors, LLC's Motion to Dismiss

the Application for Temporary Restraining Order and Injunction as to those parties, and that Equity One lacks an adequate remedy by appeal. We are confident that the trial court will vacate the Temporary Restraining Order dated January 23, 2026, the Order granting Movants' Motion for Extension of Temporary Restraining Order dated February 5, 2026, the Order Denying Respondent Equity One Franchisors, LLC's Motion to Dismiss for Improper Forum dated February 17, 2026, and the Amended Temporary Restraining Order dated February 26, 2026, to the extent that the orders granted relief to John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC, and that the trial court will sign an order dismissing the Application for Temporary Restraining Order and Injunction of John Dishon, Kristy Dishon, and Dishon Insurance Agency, LLC before the trial court takes any further action in Trial Cause Number 26DCCV0129 or allows any Movant to file a motion, pleading, or claim for relief. The writ of mandamus shall issue only in the event the trial court fails to comply.

PETITION CONDITIONALLY GRANTED IN PART.

PER CURIAM

Submitted on March 19, 2026
Opinion Delivered April 2, 2026

Before Johnson, Wright and Chambers, JJ.

33